1  LAW OFFICES OF STEVEN G. POLIN
2   Steven G. Polin (DCBN 439234)
   spolin2@earthlink.net
3  3034 Tennyson Street, NW
   Washington, D.C. 20015
   Tel:  (202) 331-5848
4  Fax:  (202) 537-2985

5  BRANCART & BRANCART
   Christopher Brancart (CBN 128475)
6  cbrancart@brancart.com
   Elizabeth Brancart (CBN 122092)
7  ebrancart@brancart.com
   P.O. Box 686
8  Pescadero, CA  94060
   Tel:  (650) 879-0141
9  Fax:  (650) 879-1103

10 Attorneys for Plaintiffs
   Newport Coast Recovery, LLC
11 and Yellowstone Women's
   First Step House, Inc.

12

13

14

15

16

FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

OCT 19 2009

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

LODGED

2009 OCT 19 PM 3: 29
CLERK U.S. DISTRICT COURT
SANTA ANA
BY: _____

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

17 NEWPORT COAST RECOVERY,      )  Case No. SACV 09-701-JVS (RNBx)
   LLC, a California Limited     )
18 Liability Company; and        )  SECOND AMENDED
   YELLOWSTONE WOMEN'S           )  COMPLAINT FOR INJUNCTIVE,
19 FIRST STEP HOUSE, INC., a     )  DECLARATORY AND
   California nonprofit corporation, ) MONETARY RELIEF; DEMAND
20                                )  FOR JURY TRIAL ON DAMAGES
                                  )  ONLY
21          Plaintiffs,           )
                                  )
22      vs.                       )
                                  )
23                                )
   CITY OF NEWPORT BEACH,        )
24 a California municipal         )
   corporation,                   )
25                                )
            Defendant.            )
26

27              **I.  PRELIMINARY STATEMENT**

28      1.      In this fair housing action, plaintiffs Newport Coast Recovery, LLC

1  and Yellowstone Women's First Step House, Inc. claim that defendant City of

2  Newport Beach (the "City") interferes with their ownership, operation, and

3  occupancy of dwellings for disabled persons recovering from alcoholism and

4  substance abuse, in violation of the Fair Housing Act, Americans with Disabilities

5  Act, Fourteenth Amendment, and related state laws.  Specifically, this action

6  challenges the City's group home zoning ordinance that discriminates against

7  residential treatment facilities for recovering substance abusers, including

8  plaintiffs' dwellings.  It further challenges the procedures and process by which

9  the City enforces its group home zoning ordinance.  It alleges that the group home

10  ordinance discriminates on the basis of disability on its face, as applied, and in

11  effect in violation of federal and state fair housing laws.  It further alleges the

12  ordinance violates the due process and equal protection clauses of the Fourteenth

13  Amendment of the United States Constitution, and the due process, equal

14  protection and privacy rights protected by article 1, §§ 1 and 7 of the California

15  Constitution, are pre-empted by federal and state law, and violate other state land

16  use laws.

17                    **II.  JURISDICTION AND VENUE**

18       2.      This Court has subject matter jurisdiction over this action under 28

19  U.S.C. §§ 1331 and 1343, 42 U.S.C. § 3613, 42 U.S.C. § 1983, and 42 U.S.C. §

20  12133.  Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction

21  over plaintiffs' additional claims under state law because plaintiffs' state law

22  claims relate to plaintiffs' federal law claims, arise out of a common nucleus of

23  operative facts, and form part of the same case or controversy under Article III of

24  the United States Constitution.

25       3.      Venue is proper because plaintiffs' claims arise from unlawful

26  conduct occurring in Orange County, California, and because the properties that

27  are the subject of this action are located in Orange County, California.

28  //

-2-

### III. **PARTIES**

4.     Plaintiff Newport Coast Recovery, LLC ("NCR") is a California limited liability company, with its principal place of business in Newport Beach, California. NCR operates a residential drug and alcohol rehabilitation facility, licensed by the State of California, located at 1216 West Balboa Boulevard in Newport Beach, which provides housing, treatment and support to individuals recovering from substance abuse or alcoholism. The NCR facility is a "dwelling" within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(b), and a "housing accommodation" within the meaning of the California Fair Employment and Housing Act, Government Code § 12927(d).

5.     Plaintiff Yellowstone Women's First Step House, Inc. ("Yellowstone") is a California nonprofit corporation, with its principal place of business in Costa Mesa, California. Yellowstone provides housing for men and women in recovery from alcoholism and drug addictions who cannot live independently due to their alcoholism and drug addiction. Yellowstone assists these individuals in the recovery process by helping them to establish long term solutions to alcoholism and drug addictions so that they may become responsible, productive members of society. Yellowstone has four dwellings that are the subject matter of this litigation. Each dwelling is a single family structure located in residential zone in the City of Newport Beach, specifically at 1621 Indus Street, 1571 Pegasus Street, 20172 Redlands Drive, and 1561 Indus Street. The Yellowstone houses are each "dwellings" within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(b), and "housing accommodations" within the meaning of the California Fair Employment and Housing Act, Government Code § 12927(d).

6.     Defendant City of Newport Beach is a chartered city under the laws of the State of California. The City has the authority to enact and enforce zoning regulations within its boundaries. The City is a public entity under the Americans with Disabilities Act, 42 U.S.C. § 12131.

-3-

# IV. FACTS

## A. INTRODUCTION

7.    The City, acting alone and in concert with others, directly and through agents, officers, and employees, has engaged in a pattern or practice of discrimination on the basis of disability in connection with the enactment and enforcement of zoning regulations.  The City has engaged in this pattern or practice for the purpose and with the effect of discriminating against persons with disabilities.  This pattern or practice of discrimination includes, but is not limited to, the commission of the following discriminatory practices:

a.    Denying or otherwise making unavailable housing to disabled persons, including those for whom NCR and Yellowstone provide or seek to provide housing, because of disability;

b.    Discriminating in the terms, conditions, or privileges of sale or rental of housing by disabled persons, including those for whom NCR and Yellowstone provide or seek to provide housing, or in the  provision of services or facilities in connection with housing, because of disability;

c.    Making, printing or publishing, or causing to be made, printed or published a statement in connection with the sale or  rental of housing that indicates a limitation, preference or discrimination on the basis of disability;

d.    Restricting or attempting to restrict housing choice of disabled persons, including those for whom NCR and Yellowstone provide or seek to provide housing, because of disability;

e.    Assigning disabled persons, including those for whom NCR and Yellowstone provide or seek to provide housing, to certain neighborhoods because of disability;

f.    Providing different municipal services to disabled persons,

including those for whom NCR and Yellowstone provide or
seek to provide housing, because of disability;

g.    Evicting or threatening to evict disabled persons, including
those for whom NCR and Yellowstone provide or seek to
provide housing, because of disability;

h.    Failing to make reasonable accommodations in rules, policies
and practices that may be necessary to afford disabled persons,
including those for whom NCR and Yellowstone provide or
seek to provide housing, an equal opportunity to use and enjoy
a dwelling;

i.    Failing to affirmatively further fair housing in the
administration and application of its zoning, building and life
safety codes;

j.    Denying or limiting disabled persons, including those for
whom NCR and Yellowstone provide or seek to provide
housing, the opportunity to participate in or benefit from the
supportive housing program offered by residential recovery
facilities, including the NCR and Yellowstone residential
treatment programs;

k.    Using land use ordinances and methods of administering those
ordinances with the purpose of subjecting disabled persons,
including those for whom NCR and Yellowstone provide or
seek to provide housing, to discrimination on the basis of
disability;

l.    Denying disabled persons in recovery, including those for
whom NCR and Yellowstone provide or seek to provide
housing, an opportunity to participate in a program in the most
integrated setting appropriate to their needs;

-5-

m.    Denying disabled persons, including those for whom NCR and Yellowstone provide or seek to provide housing, an equal opportunity to participate in or benefit from services and programs equal to those of people without disabilities;

n.    Utilizing licensing and permit requirements to provide municipal code enforcement services that are not equal as applied to disabled and nondisabled persons;

o.    Utilizing unequal licensing and permit requirements to deny disabled persons, including those for whom NCR and Yellowstone provide or seek to provide housing, enjoyment of any rights, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit or service;

p.    Aiding, abetting, inciting, compelling or coercing the doing of acts or practices in violation of fair housing laws;

q.    Discriminating through public land use practices, decisions, and authorizations because of disability, including the use of zoning laws that make housing opportunities unavailable;

r.    Selectively enforcing land use requirements with the purpose of subjecting disabled persons, including those for whom NCR and Yellowstone provide or seek to provide housing, to discrimination on the basis of disability; and,

s.    Retaliating against plaintiffs because of their exercise their fair housing rights

13.    Plaintiffs have been and will be injured by the commission of this pattern or practice of discrimination by the City.  As such, plaintiffs are aggrieved persons within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(i), the Civil Rights Act of 1871, 42 U.S.C. § 1983, the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and the California Fair Employment and Housing Act,

1  California Government Code § 12927(g).

2  **B. NEWPORT COAST RECOVERY**

3       14.    Since 2002, NCR has operated a state-licensed residential drug and

4  alcohol treatment program located at 1216 West Balboa Boulevard in Newport

5  Beach. The NCR residential treatment program is housed in a small apartment

6  building, containing seven separate dwelling units (referred to herein as the "NCR

7  residential treatment facility"). NCR is licensed by the California Department of

8  Alcohol and Drug Programs to provide housing and treatment for a maximum of

9  29 occupants. NCR's occupants live together, sharing responsibilities for

10  operation of their household as part of their recovery. They also receive drug and

11  alcohol treatment from licensed counselors. Taken together, the supportive

12  environment and treatment provided by NCR is needed for its occupants to

13  recover from addiction and maintain their sobriety.

14       15.    When originally constructed in 1949, the apartment building now

15  housing the NCR residential treatment program was situated in an R-3 zone,

16  which was reclassified as an R-2 zone by the City in 1989. Today, the NCR

17  residential treatment facility is still situated in an R-2 zone.

18  **C. YELLOWSTONE**

19       16.    Between 2003 and 2008, Yellowstone established its four houses in

20  residential neighborhoods in an unincorporated part of Orange County. The house

21  at 1621 Indus Street was established in or about 2005 for up to 18 women in

22  recovery. The house at 20172 Redlands Drive was established in or about 2005

23  for up to 15 men in recover. The house at 1571 Pegasus Street was established in

24  or about 2003 for up to 18 men and women in recovery. The house at 1561 Indus

25  was established in or about 2007 for up to 12 women in recovery. In March 2007,

26  the houses at 1561 Indus and 1571 Pegasus were chartered to operate as Oxford

27  Houses by Oxford House, Inc. Oxford House, Inc. assists in establishing self-run,

28  self-supported recovery houses for persons recovering form drug and/or alcohol

1  addiction.  Oxford House, Inc. serves as the umbrella organization for a national

2  network of over 1400 individual houses.  All Oxford Houses are required to

3  follow three rules.  Each house must (1) be financially self-supported,  (2) be

4  democratically run, and (3) immediately expel anyone who relapses into drug

5  and/or alcohol use.

6  ## D.  CITY OF NEWPORT BEACH

7          17.    The City of Newport Beach, population approximately 80,000, is a

8  seaside community.  It includes a large number of single family houses, duplexes

9  and triplexes whose owners rent their dwellings as short-term vacation rentals to

10  diverse groups, such as families on vacation and students on breaks.  It is a

11  popular location for groups of students to rent dwellings while attending local

12  colleges and universities.  This practice is widespread.  In 2007, the City allowed

13  804 dwellings to rent 5,734 beds for such short-term rental purposes.  In contrast,

14  the City has approximately 500 beds for persons in recovery.

15          18.    The City has adopted the Newport Beach Zoning Code (the "NBZC")

16  that governs land use policy in Newport Beach.  The NBZC establishes residential

17  districts, such as R-2 where the NCR residential treatment facility is located.

18  ## E.  THE MORATORIUM ORDINANCES

19          19.    In 2007, the City enacted a series of ordinances for the purpose and

20  with the effect of discriminating against disabled persons by blocking the creation

21  and operation of certain housing for disabled persons in residential districts,

22  including housing for persons recovering from substance abuse, while explicitly

23  permitting the same or similar uses by nondisabled persons in residential districts.

24          Collectively, these ordinances are referred to as the Moratorium Ordinances.

25  ### 1. April 2007 Moratorium Ordinance

26          20.    On April 24, 2007, Ordinance No. 2007-8 was introduced and

27  adopted by the City Council of Newport Beach.  It imposed, effective

28  immediately, a moratorium on the establishment or operation of any new transitory

1    uses in a residential district for a period of 45 days.

2          21.    Ordinance No. 2007-8 provided that for a period of 45 days: "No new

3    transitory use shall be established or operated, and no use permits, variances,

4    short-term lodging permits, other permits, business licenses, federal exception

5    permits, or other applicable entitlements for the establishment or operation of any

6    new transitory use shall be approved or issued unless otherwise provided for

7    herein.  Licensed residential care facilities and small and large family child care

8    homes shall be exempt from the provisions of this ordinance."

9          22.    Ordinance No. 2007-8 defined "transitory use" as including "new

10   residential uses where the average tenancy is usually less than ninety (90) days,

11   including but not limited to new parolee-probationer homes, safe houses,

12   unlicensed residential care facilities, residential care facilities, general, short-term

13   lodging pursuant to short-term lodging permits and other similar residential uses

14   that are transitory in nature."

15                        **2.  May 2007 Moratorium Ordinance**

16         23.    On May 30, 2007, the City renewed and modified the moratorium.  It

17   enacted Ordinance No. 2007-10, extending the moratorium for a period of five

18   months, but now excluding short-term rentals, such as vacation and student

19   rentals, from its coverage.

20         24.    Ordinance No. 2007-10 provided that for a period of five months:

21   "No new transitory use shall be established or operated, and no use permits,

22   variances, short-term lodging permits, other permits, business licenses, federal

23   exception permits, or other applicable entitlements for the establishment or

24   operation of any new transitory use shall be approved or issued unless otherwise

25   provided for herein.  Licensed residential care facilities and small and large family

26   child care homes, and short-term lodging uses shall be exempt from the provisions

27   of this ordinance."

28         25.    Ordinance No. 2007-10 defined "transitory use" as including "new

                                        -9-

1  residential uses where the average tenancy is usually less than ninety (90) days,

2  including but not limited to new parolee-probationer homes, safe houses,

3  unlicensed residential care facilities, residential care facilities, and other similar

4  residential uses that are transitory in nature." It deleted "general, short-term

5  lodging pursuant to short-term lodging permits" from the definition in Ordinance

6  No. 2007-8, thereby exempting transitory vacation and student rentals from its

7  coverage.

8  **3. October 2007 Moratorium Ordinance**

9       26.    On October 18, 2007, the City renewed and again modified the

10  moratorium. It enacted Ordinance No. 2007-16, extending the moratorium for a

11  period of twelve months. It again excluded transitory uses that housed

12  nondisabled persons, such as vacation and student rentals, from its coverage, while

13  adding language that explicitly targeted housing for disabled persons.

14       27.    Ordinance No. 2007-16 provided that for a period of 12 months: "No

15  new transitory use (including, but not limited to Residential Care Facilities,

16  General, and unlicensed residential care facilities [i.e., both unlicensed and

17  licensed residential treatment facilities like NCR's],) shall be established or

18  operated, and no use permits, variances, short-term lodging permits, other permits,

19  business licenses, federal exception permits, or other applicable entitlements for

20  the establishment or operation of any new transitory use shall be approved or

21  issued unless otherwise provided for herein. Licensed residential care facilities

22  (so-called "Licensed 6 and Unders"), and small and large family child care homes,

23  and short-term lodging uses shall be exempt from the provisions of this

24  ordinance."

25       28.    Ordinance No. 2007-16 defined "transitory use" as including "new

26  residential uses where the average tenancy is usually less than ninety (90) days,

27  including but not limited to new parolee-probationer homes, safe houses,

28  unlicensed residential care facilities, residential care facilities, and other similar

-10-

1   residential uses that are transitory in nature."  Again, the City exempted "general,

2   short-term lodging pursuant to short-term lodging permits" from the definition,

3   thereby permitting transitory vacation rentals, while prohibiting non-transitory

4   housing for disabled persons, such as residential treatment facilities.

5   **F.  THE CITY'S NEW GROUP HOME ORDINANCE**

6       29.    On January 20, 2008, the City enacted Ordinance 2008-05

7   (hereinafter the "Group Home Ordinance") regulating residential treatment

8   facilities for recovering substance abusers by imposing discriminatory terms,

9   conditions and privileges upon their establishment and operation.  The Group

10  Home Ordinance amends the existing Newport Beach Zoning Code in several

11  significant respects that further restricts, limits or prohibits groups of unrelated

12  disabled persons from residing in dwellings of their choice.

13      30.    The Group Home Ordinance creates special land use rules for

14  providers of housing for the disabled that are different from rules for similarly

15  situated dwellings occupied by nondisabled applicants.  It classifies all existing

16  housing for seven or more disabled persons as "Residential Care Facilities,

17  General."  It further classifies that housing, as well as housing for six or few

18  disabled persons not requiring a license, as a "nonconforming use."[1]  As such, it

19  requires existing housing providers to apply for a "Use Permit" in order to

20  continue to provide housing for persons with disabilities or face abatement

21  proceedings.  It then subjects review of those permits to a unique standard of

22  appellate review by the City Council that applies only to that defined housing for

23  the disabled.

24  _____

25      [1]The City recognizes that state law requires it to treat state licensed facilities

26  for six or fewer disabled persons as a single housekeeping unit for zoning
    purposes.  NBZC § 20.05.030(i).  Thus, the City cannot require a use permit for

27  that housing, classified by it as "Residential Care Facilities, Small Licensed."  All

28  other residential care facilities for disabled persons became a nonconforming use
    by the enactment of the Group Home Ordinance.

-11-

1    31.    The Group Home Ordinance defines "Residential Care Facilities,

2  General" as follows:

>   Any place, site or building, or groups of places, sites or buildings, licensed
>   by the state or unlicensed, in which seven or more individuals with a
>   disability reside who are not living together as a single housekeeping unit
>   and in which every person residing in the facility (excluding the licensee,
>   members of the licensee's family, or persons employed as facility staff) is an
>   individual with a disability.

9    32.    As of its effective date, the Group Home Ordinance prohibits the

10  establishment or operation of new Residential Care Facilities, General in any

11  residential zone within the City of Newport Beach, and requires that existing

12  facilities submit to the onerous "Use Permit" process, described below, in order to

13  continue operation.  The Group Home Ordinance also restricts or limits the

14  establishment or operation of Residential Care Facilities, General in multifamily

15  zones.

16    33.    The new Group Home Ordinance has been applied by the City in a

17  manner that targets and discriminates against persons with disabilities, including

18  persons for whom NCR and Yellowstone provide or seek to provide housing, and

19  violates their rights to privacy.

20  **G.  THE CITY'S ENFORCEMENT OF THE NEW GROUP HOME**

21  **ORDINANCE THROUGH THE USE PERMIT PROCESS**

22  **1.  The Group Home Use Permit Process**

23    34.    The establishment or operation of a Residential Care Facility, General

24  in a multifamily zone, and the continued operation of an existing Residential Care

25  Facility, General in a residential or multifamily zone, is subject to a "use permit"

26  process pursuant to the new Group Home Ordinance.  NBZC Chapter 20.91A

27  (2008).  The permit application is burdensome and discriminatory.  It applies only

28  to certain types of dwellings based solely upon the disability of the residents of

-12-

1 | those dwellings.

## 2. The Group Home Use Permit Application Forms

35. To start, the permit application compels disclosure of the following information: Whether the applicant is a for profit or nonprofit; whether the operator/manager is also the lessee; whether the applicant operates or owns other group home or similar uses (and if yes, detailed information about those uses); whether anyone associated with the applicant has operated or owned other group homes in California within the past five years (and if yes, detailed information about that history); whether the applicant has ever obtained an operators license or permit from the State within the past five years (and if yes, detailed information about that history); and whether the proposed housing is located within a three block radius of other conditional uses (map required). The application also requires disclosure of the following information: Total occupancy of the housing, number of residents receiving recovery treatment or detoxification services, number of staff, number of resident staff, presence and number and ages of children of the residents (including a disclosure of children who visit their parents overnight), disability status of all residents, total number of employees of the applicant, nature of services being provided at the dwelling, maximum number of clients who will use the dwelling on any one day but who reside elsewhere, maximum number of client visitors who will visit the dwelling during any one week, maximum number of others who will visit the dwelling during any one week, typical duration of occupancy by residents, schedule for use of the housing, existence of a curfew, existence of care-related activities and number of residents involved in care-related activities, nature and frequency of all deliveries. Next, the permit application compels the applicant to state whether residents agree to comply with the City's Good Neighbor Principles. All of this information is required to complete Form 100 of the application for a use permit under the new Group Home Ordinance.

1      36.    In addition to Form 100, there are several more forms that must be

2   completed as part of the use permit application.  For example, Form 150 of the

3   application requires the applicant to provide identifying information; educational

4   experience; management experience; and work experience.  Form 200 requires the

5   applicant to provide information as to the name of the corporation, date of

6   incorporation, identity of corporate officers, principal place of business, identity of

7   a contact person, the name and identity of all persons who own a minimum of ten

8   percent of the stock in the corporation, identity of the members of the board of

9   directors,  number of directors, contact information for each board member and

10  officer, frequency of director meetings, terms of office, and method of selection.

11  Form 200D requires the applicant to provide board resolutions authorizing a

12  delegation to the Program Director and/or Administrator or other appropriate staff.

13  (There are other forms for partnerships or sole proprietorships.)  Form 400

14  requires the applicant to provide the name and title of each employee; the date

15  employment started; the total time of recovery program experience; total hours per

16  month scheduled to work; the date of the last CPR training; and the date of the last

17  "first aid" training.  Form 500 requires the applicant to account for a weekly

18  schedule of activities and services in one hour blocks beginning at 6 a.m. and

19  ending at 8 p.m. for each day of the week.  Form 500 also requires the applicant to

20  provide the total hours per week of "individual/group/ education sessions,

21  recovery or treatment planning, and detoxification services."

22         **3.  The Group Home Use Permit Application Hearing Process**

23      37.    The Group Home Ordinance further provides that each application for

24  a use permit will be decided by a Hearing Officer.  NBZC § 20.91A.020.  After the

25  City collects the information required by Chapter 20.91A, City staff issues a report

26  to the Hearing Officer, recommending whether certain findings can be made in

27  favor or against the application for use permit.  The application is then set for

28  hearing before the City Hearing Officer.

38.    To regulate housing for disabled persons, the Group Home Ordinance provides special rules for evaluating only those applications submitted by housing providers for persons with disabilities.  These rules govern the findings that the City Hearing Officer is required to make in determining an application for a use permit.  These findings, like the special rules upon which they are based, apply only to groups of disabled persons who have been classified as making up "Residential Care Facilities," other than licensed facilities with six or fewer disabled persons.

### 4. Required Findings by the Hearing Office under the Group Home Ordinance

39.    In order to recommend approval of a "Use Permit" application, the Hearing Officer is required to follow special standards and make specific findings which are not required of housing for nondisabled persons.  NBZC §§ 20.91A.050 and 20.91A.060.  Those special factors range from the smallest detail (whether second-hand smoke can be detected outside the housing, § 20.91A.050(A)) to factors not imposed upon nondisabled applicants (imposing occupancy restriction, 20.91A.050(C)(2)) to facially unlawful considerations (imposing separation requirements between group homes, 20.91A.060(D)(3)).

40.    The Group Home Ordinance directs the Hearing Officer to apply a special criteria that explicitly discriminates against disabled persons.  It requires the Hearing Officer to determine whether the applicant's housing for the disabled will create an overconcentration of residential care uses in the vicinity of the proposed use.  Specifically, in determining that finding, the Ordinance requires the Hearing Officer to consider the proximity of the use location to schools, parks, other residential care facilities, and outlets for alcoholic beverages, and whether it would be appropriate to limit the existence of this type of housing for disabled persons to no more than one or two such dwellings per block.  NBZC § 20.91A.060(D).

### 5. The Reasonable Accommodation Process

41.    The Group Home Ordinance also provides that each application for a reasonable accommodation will be decided by a Hearing Officer who must make certain findings in order to approve the request. NBZC Chapter 29.98.025. The applicant is required to submit the information on which those required findings will be made. NBZC § 20.98.020(D)(1). The required findings unlawfully place the burden on the applicant to disprove potential affirmative defenses by the City to the requested reasonable accommodation, including that the requested accommodation will not impose an undue financial or administrative burden on the City, that the requested accommodation will not result in a fundamental alteration in the nature of the City's zoning program, and that the requested accommodation will not result in a direct threat to the health or safety of other individuals or substantial physical damage to the property of others. NBZC § 20.98.025(B).

42.    Any reasonable accommodation approved under the Group Home Ordinance expires within 24 months, unless, *inter alia*, the applicant applies for a time extension, which may be granted by the Hearing Officer for good cause for a period or periods not to exceed three years. NBZC § 20.98.030.

43.    The provisions of the Group Home Ordinance's reasonable accommodation approval process are overly burdensome and were designed with the purpose or effect of discouraging reasonable accommodation requests and making it more difficult for them to be granted.

### H. LICENSED RESIDENTIAL FACILITIES ARE REGULATED BY THE CALIFORNIA DEPARTMENT ALCOHOL AND DRUG PROGRAMS

44.    The California Department of Alcohol and Drug Programs (hereinafter "ADP") licenses residential facilities that provide nonmedical recovery, treatment, and detoxification services for users of alcohol and other drugs pursuant to California Health and Safety Code §§ 11834.01-11834.50; *Cal.*

-16-

1   *Code Regs., Tit. 9, §§ 10500-10631*; 76 Ops. Cal. Atty. Gen. 173, 175 (1993).

2       45.    Section 11834.03 of the Health and Safety Code provides the criteria

3   ADP is required to consider in processing an application for licensing of a

4   residential treatment facility:  Any person or entity applying for licensure shall file

5   with the department, on forms provided by the department, all of the following:

6           (a) A completed written application for licensure.

7           (b) A fire clearance approved by the State Fire Marshal or local fire

8           enforcement officer.

9           (c) A licensure fee, established in accordance with Chapter 7.3

10          (commencing with Section 11833.01).

11      46.    Siting of a residential treatment facility in proximity to other

12  residential treatment facility which may result in overconcentration of such facility

13  is not a basis for denying an applicant a license for operating a residential

14  treatment facility.

15      47.    The City is pre-empted pursuant to California Health and Safety Code

16  §§ 11834.01-11834.50 from denying NCR a use permit or reasonable

17  accommodation request on the basis that there is an overconcentration of similar

18  facilities in the vicinity of 1216 West Balboa Blvd or on other bases involving

19  alleged licensing violations by NCR.  See *90 Ops. Cal. Atty. Gen. 109.*

20  **I. THE CITY'S TREATMENT OF NCR'S APPLICATION FOR A USE**

21  **PERMIT AND REQUEST FOR REASONABLE ACCOMMODATION.**

22      48.    On May 20, 2008, NCR applied for a use permit pursuant to the

23  Group Home Ordinance in order to continue the operation of the NCR residential

24  treatment program at its location on West Balboa Boulevard.  It took more than ten

25  hours for NCR to complete the application, and the City claimed on at least one

26  occasion that the application was insufficient.  The City staff recommended that

27  NCR's application be approved with several conditions to be imposed which NCR

28  was willing to accept.  On December 8, 2008, the first hearing was conducted by

the City's Hearing Officer regarding NCR's application.  That hearing was
continued to January 12, 2009.  Citizen opposition was intense and overwhelming.
Nineteen citizens spoke in opposition to NCR's use permit application.  Eleven
opponents complained of NCR's close proximity to an elementary school and the
threat that NCR's residents posed to the school children.  Citizens opposed NCR's
application because of the occupants of NCR's residential treatment facility were
persons recovering from substance abuse or alcoholism.

49.    On February 4, 2009, the City's Hearing Officer issued a resolution,
adopting the positions of the opponents to NCR's application, especially in regard
to the school proximity issue.  The hearing officer also denied NCR's application,
based largely upon the fact that the NCR residential treatment facility was in close
proximity to a daycare, a church, a playground, outlets selling alcohol, and
another facility providing housing for persons in recovery.  NCR appealed to the
City Council which, on April 14, 2009, refused to act on the appeal and instead
remanded the application to City's Hearing Officer, over NCR's objections.

50.    On or about April 7, 2009, NCR made a request for a reasonable
accommodation wherein it requested that the City adopt the recommendations
contained in the staff report that were rejected by the Hearing Officer on January
12, 2009.

51.    On June 25, 2009, counsel for NCR requested that the City provide a
copy of the City Staff Report on NCR's pending requests scheduled for hearing on
July 7, 2009, at least 10 days in advance of the hearing so that NCR could respond
to the report.  The City declined to provide the Staff Report as requested, instead
providing it to counsel for NCR shortly before the July 4th holiday, only two
business days before the hearing.  The Staff Report was over 70 pages long and
contained new material never disclosed by the City to NCR, including complaints
relating to licensing issues, not zoning.  That unfairness is symptomatic and a
further example of the City's pattern of imposing additional hurdles on use permit

1   applications submitted by housing providers for persons with disabilities, not

2   imposed on other persons, for the purpose or with the effect of discouraging

3   providers of housing for persons with disabilities from seeking such permits.

4       52.    On July 7, 2009, the City's Hearing Officer conducted a public

5   hearing on NCR's use permit application and request for reasonable

6   accommodation.  During the hearing, the City presented information regarding

7   alleged licensing violations by NCR as a reasonable denying its requests, and

8   alleged an "over-concentration" of residential rehabilitation facilities in the area.

9   It was improper for the City to rely on information related to NCR's licensing as

10  the basis for a ruling on a zoning matter.  The Hearing Officer made an oral

11  tentative determination that he would deny NCR's requests with prejudice.

12      53.    Using alleged licensing violations as a basis for denying NCR's

13  zoning requests serves as a constructive revocation of NCR's license without the

14  procedural protections accorded licensee pursuant to Health and Safety Code §

15  11834.37.  NCR has a protectible property interest in continued operation of its

16  State-licensed activity.  The City's denial of NCR's zoning requests on grounds

17  under the sole regulation of ADP has denied NCR of the adequate procedural

18  protections to which it is entitled.

19      54.    On August 18, 2009, the Hearing Officer issued a written order

20  denying NCR's request and requesting the City to prepare a Resolution of Denial.

21  NCR was not served with a copy of that order and only discovered it by

22  happenstance on the City's website on September 8, 2009.

23  **J. THE CITY'S TREATMENT OF YELLOWSTONE'S APPLICATION**

24  **FOR A USE PERMIT AND REQUEST FOR REASONABLE**

25  **ACCOMMODATION.**

26      55.    Prior to January 1, 2008, Yellowstone's group residential houses were

27  located in an unincorporated area of Orange County.  Yellowstone is informed and

28  believes and thereupon alleges that during that time it was in compliance with all

-19-

1    zoning requirements for their group residential uses.   During the time period of

2    2003 through 2007, Yellowstone had obtained the appropriate fire clearances from

3    the Orange County Fire.

4        56.    Effective January 1, 2008, the City of Newport Beach annexed the

5    area of Orange County in which Yellowstone's houses are located.

6        57.    In light of the City of Newport Beach's annexation, Yellowstone

7    Yellowstone applied to the City for a use permit op operate each of its houses in

8    accordance with the provisions of the City's Group Home Ordinance.  In May,

9    2008 Yellowstone made a request for a reasonable accommodation for each of the

10   houses in accordance with the provisions of the Group Home Ordinance; namely

11   that (1) the City treat each house use as a single housekeeping unit as that term is

12   defined by NBZC §20.03.030; (2) the City waive the occupancy restrictions of

13   NBZC § 20.91A.050 which restricts occupancy to two residents per bedroom plus

14   one staff member in each dwelling; and (3) the City waive the fee for each use

15   permit application as required by NBZC §20.90.030.

16       58.    On or about June 10, 2008, Yellowstone filed a complaint with the

17   United States Department of Housing and Urban Development wherein it alleged

18   that the City of Newport Beach was committing discriminatory housing practices

19   in the enactment and enforcement of the Group Home Ordinance.  The United

20   States Department of Housing and Urban Development has forwarded

21   Yellowstone's housing discrimination complaint to the United States Department

22   of Justice for its review and possible enforcement action.

23       59.    The City did not hold hearings on Yellowstone's application for a use

24   permit and request for reasonable accommodation until February 20, 2009.  On

25   April 14, 2009, the City denied Yellowstone's use permit application and request

26   for reasonable accommodation.  Yellowstone filed a timely notice of appeal for

27   hearing on the denial of the use permit application and request for a reasonable

28   accommodation before the Newport Beach City Council.  That hearing is set for

1  November 24, 2009.

2      60.    During the pendency of Yellowstone's housing discrimination

3  complaint and the pendency of its appeal to the City Council, the City has coerced,

4  intimidated, threatened, or interfered with Yellowstone and its residents in their

5  exercise or enjoyment of rights granted to them by the Federal Fair Housing Act

6  by attempting to impose more stringent fire code and parking requirements.

7      **K. THE CITY'S PROCEDURES ARE FUNDAMENTALLY UNFAIR.**

8      61.    In attempting to comply with the City's requirements to obtain a use

9  permit and/or reasonable accommodation, plaintiffs have been subjected to unfair

10 procedural requirements.

11     62.    The City failed to provide NCR with timely notice of determinations,

12 hearings and the decisions of its Hearing Officer.  There are no procedures by

13 which an applicant may file a motion with the Hearing Officer or otherwise bring

14 matters to the Hearing Officer's attention.  There are no procedures for disclosure

15 of witnesses, cross-examination of witnesses.  The Hearing Officer is permitted to

16 consider evidence barred from disclosure by HIPAA and the confidentiality

17 restrictions of the California ADP.  These procedural deficiencies fail to comport

18 with recognized standards of administrative procedures, including the

19 Administrative Procedures Act and California licensing procedures, and are

20 fundamentally unfair to NCR, Yellowstone and other applicants required to

21 proceed under the Group Home Ordinance, depriving them of procedural due

22 process.

23     **L. THE CITY'S ZONING CODE IS UNENFORCEABLE**

24     63.    Plaintiffs are further informed and believes and thereupon alleges that

25 the City's housing element of its General Plan is out of compliance with State law,

26 and therefore the City's Zoning Code is unenforceable against plaintiffs.

27     64.    At all times relevant to this litigation, including at the present time,

28 and at the times the City enacted all three moratorium ordinances and Ordinance

-21-

1    No. 2008-05, the Newport Beach General Plan was not in substantial compliance

2    with California's Planning and Zoning law, California Government Code §§

3    65000 *et seq.* ("the Planning and Zoning Law") regulating the content of a local

4    government's General Plan, including, but not limited to, the City's failure to

5    comply with Government Code §§ 65580 *et seq.*, which sets for the requirements

6    for a legally sufficient housing element of the City's General Plan.

7         65.    At all times relevant to this litigation, the City was aware that its

8    General Plan was not in compliance with the Planning and Zoning Law, because

9    the California Department of Housing and Community Development ("HCD") had

10   repeatedly informed the City of its noncompliance in writing and by oral

11   communications.  As recently as January 2009, the City's General Plan was listed

12   as out of compliance by an official HCD publication regarding local government

13   compliance with housing element requirements.

14        66.    One of the legal defects of the City's General Plan was its failure to

15   comply with the requirements of Government Code § 65583 to analyze the

16   housing needs of persons with disabilities, to analyze zoning and planning

17   constraints on the provision of housing for persons with disabilities, and to specify

18   a program of actions to reduce and remove such constraints.  Contrary to those

19   express requirements, the City has imposed further constraints on such housing as

20   set forth in this complaint.  The City's zoning actions were inconsistent with state

21   law mandated elements of the General Plan.

22                                    **M. INJURIES**

23        67.    By reason of the City's unlawful acts and practices, NCR and

24   Yellowstone have suffered violation of their federal statutory and constitutional

25   rights, loss of the value, use and enjoyment of their property, frustration and loss

26   of current and future income, and been subjected to enforcement of invalid

27   ordinances and to unreasonable and unlawful abatement, and NCR has lost the

28   benefit of its licensure by the State of California.  The disabled persons housed by

1  NCR and Yellowstone have suffered a violation of their federal and state civil

2  rights and rights to privacy, which has injured NCR and Yellowstone.

3  Accordingly, plaintiffs are entitled to compensatory damages.

4      68.    There now exists an actual controversy between the parties regarding

5  the City's duties under federal and state civil rights laws.  Accordingly, plaintiffs

6  are entitled to declaratory relief under their federal and state law claims including,

7  but not limited to, 42 U.S.C. § 3613(c)(1), 42 U.S.C. § 1983, 42 U.S.C. § 12133,

8  California Government Code § 12989.2, and the California Constitution, as well

9  as Rule 57 of the Federal Rules of Civil Procedure.

10      69.    Unless enjoined, the City will continue to engage in the unlawful acts

11  and the pattern or practice of discrimination described above.  Plaintiffs have no

12  adequate remedy at law.  Plaintiffs are now suffering and will continue to suffer

13  irreparable injury from the City's acts and the pattern or practice of discrimination

14  unless relief is provided by this Court.  Accordingly, plaintiffs are entitled to

15  injunctive relief under their federal and state law claims including, but not limited

16  to, 42 U.S.C. § 3613(c)(1), 42 U.S.C. § 1983, and 42 U.S.C. § 12133, California

17  Government Code § 12989.2, and the California Constitution, as well as Rule 65

18  of the Federal Rules of Civil Procedure.

19                    **V.  CLAIMS FOR RELIEF**

20                        **A.  FIRST CLAIM**

21                    **[Federal Fair Housing Act]**

22      70.    Plaintiffs reallege and incorporate herein by reference each

23  proceeding paragraph.

24      71.    Defendant City of Newport Beach injured plaintiffs by committing

25  discriminatory housing practices in violation of the Fair Housing Act, 42 U.S.C.

26  §§ 3601 *et seq.*

27  //

28  //

**B.  SECOND CLAIM**

**[Americans with Disabilities Act]**

72.    Plaintiffs reallege and incorporate herein by reference each proceeding paragraph.

73.    Defendant City of Newport Beach injured plaintiffs by committing unlawful practices in violation of  Americans with Disabilities Act, 42 U.S.C. §§ 12131 *et seq.*

**C.  THIRD CLAIM**

**[California Fair Employment and Housing Act]**

74.    Plaintiffs reallege and incorporate herein by reference each proceeding paragraph.

75.    Defendant City of Newport Beach injured plaintiffs by committing unlawful practices in violation of California Fair Employment and Housing Act, Government Code §§ 12926, 12927, 12955 *et seq.*

**D.  FOURTH CLAIM**

**[42 U.S.C. § 1983]**

76.    Plaintiffs reallege and incorporate herein by reference each proceeding paragraph.

77.    Defendant City of Newport Beach injured plaintiffs by enacting the Group Home Ordinance in violation of plaintiffs's rights to due process and equal protection under the Fourteenth Amendment.

**E.  FIFTH CLAIM**

**[Cal. Const., art. 1, §§ 1 &7]**

78.    Plaintiffs reallege and incorporate herein by reference each proceeding paragraph.

79.    Defendant City of Newport Beach injured plaintiffs by enacting and enforcing the Group Home Ordinance in violation of plaintiffs's rights to privacy,

1  due process and equal protection under the California Constitution, article 1, §§ 1

2  and 7.

### F. SIXTH CLAIM

**[Deficient General Plan and Zoning Inconsistency]**

5      80.    Plaintiffs reallege and incorporate herein by reference each preceding

6  paragraph.

7      81.    The Group Home Ordinance is unenforceable against plaintiffs

8  because the City had failed to enact a valid General Plan, or amend its General

9  Plan to comply with applicable state law, at the time those ordinances were

10  adopted.  The City's course of conduct with regard to plaintiffs, including, but not

11  limited to, enacting and attempting to enforce the moratorium ordinances and the

12  Group Home Ordinance, was unlawful because these zoning actions were

13  inconsistent with mandatory elements of the General Plan under the California

14  Planning and Zoning Law.

15      82.    Defendant's unlawful enforcement of its ordinances has injured

16  plaintiffs.

### G. SEVENTH CLAIM

**[Nonconforming Use]**

19      83.    Plaintiffs reallege and incorporate herein by reference each preceding

20  paragraph.

21      84.    During all times relevant to this litigation, plaintiffs had the right to

22  continue to use their properties to operate a residential facilities because plaintiffs'

23  uses were continuous and lawful under the zoning applicable to plaintiffs'

24  properties prior to the adoption of the Group Home Ordinance and/or annexation

25  into the City of Newport Beach.

26      85.    Plaintiffs continue to have the right to operate their residential

27  facilities as nonconforming uses not subject to abatement.  Defendant's abatement

28  schedule and abatement procedure set forth in the Group Home Ordinance are

-25-

1  unreasonable and unlawful.

2      86.    Defendant's enforcement of the unreasonable and unlawful abatement

3  procedures set forth in the Group Home Ordinance has injured plaintiffs.

4                    **H. EIGHTH CLAIM**

5              **[Preemption under Federal Law]**

6      87.    Plaintiffs reallege and incorporate herein by reference each preceding

7  paragraph.

8      88.    During all times relevant to this litigation, Group Home Ordinance

9  was unlawful and unenforceable because it was in conflict with and preempted by

10  federal law, including, but not limited to, the Fair Housing Act and the Americans

11  with Disabilities Act.

12                    **I. NINTH CLAIM**

13              **[Preemption under State Law]**

14      89.    Plaintiffs reallege and incorporate herein by reference each preceding

15  paragraph.

16      90.    During all times relevant to this litigation, the Group Home

17  Ordinance were unlawful and unenforceable because they were in conflict with

18  and preempted by state law, including, but not limited to, the Fair Employment

19  and Housing Act, Government Code §§ 12900 *et seq.*, the California Planning and

20  Zoning Law, California Government Code §§ 65000 *et seq.*, and the provisions of

21  state law governing the licensing of residential treatment facilities, California

22  Health and Safety Code §§ 11834.01 *et seq.*

23                    **J. EIGHTH CLAIM**

24          **[California Constitution, art. 11, § 7]**

25      91.    Plaintiffs reallege and incorporate herein by reference each preceding

26  paragraph.

27      92.    During all times relevant to this litigation, the City's course of

28  conduct with regard to plaintiffs, including, but not limited to enacting and

1  attempting to enforce the Group Home Ordinance, was unlawful because the

2  City's course of conduct exceeded the City's lawful zoning power under Article

3  11, § 7 of the California Constitution.

4  ## VI.  **PRAYER**

5  **WHEREFORE**, plaintiffs prays that the Court award them the following

6  relief:

7  1.    Declare that the City acted unlawfully under the Fair Housing Act,

8  the Americans with Disabilities Act, and other federal and state laws as alleged

9  herein;

10  2.    Declare that the City's enactment, administration, application, and

11  enforcement of the Group Home Ordinance violates the rights of NCR and

12  Yellowstone and their residents under the Fair Housing Act, the Americans with

13  Disabilities Act, Fourteenth Amendment, and other federal and state laws alleged

14  herein;

15  3.    Enter a temporary restraining order, preliminary and permanent

16  injunctions enjoining the City, its officers, employees, agents, attorneys and

17  successors, and all persons in active concert or participating with any one of them

18  from enforcing the Group Home Ordinance, and from taking actions that either

19  directly or indirectly interfere in any way with NCR's and Yellowstone's abilities

20  to provide housing to groups of unrelated, disabled persons who are in recovery

21  from alcoholism and substance abuse;

22  4.    Enter a temporary restraining order, preliminary and permanent

23  injunctions enjoining the City from instituting abatement proceedings against

24  NCR and Yellowstone;

25  5.    Enter a temporary restraining order, preliminary and permanent

26  injunction enjoining the City, its officers, employees, agents, attorneys and

27  successors, and all persons in active concert or participating with any of them from

28  interfering with the operation of any dwelling owned or operated by NCR and

-27-

1  Yellowstone as a dwelling for recovering alcoholics and substance abusers, and

2  interfering in any way with the right of NCR's and Yellowstone's residents to

3  reside in those dwellings;

4         6.      Award compensatory damages;

5         7.      Grant an award of reasonable costs and attorneys' fees; and,

6         8.      Order other such other relief as the Court deems just and proper.

7  Dated:  October 19, 2009.

8                                 Respectfully submitted,

9                                 LAW OFFICE OF STEVEN G. POLIN
                                   BRANCART & BRANCART
10

11

12                                 Elizabeth Brancart
                                   Attorneys for Plaintiffs
13                                 ebrancart@brancart.com

14

15  **VII.   DEMAND FOR JURY TRIAL ON DAMAGES ONLY**

       The parties to this litigation have agreed to a bifurcated trial where the
16
    issues of liability are tried by the Court and the issue of damages is tried by a jury.
17
    Accordingly, plaintiffs hereby request a jury trial on the issue of damages only.
18
          Dated:  October 19, 2009.
19

20                                 Respectfully submitted,

21                                 LAW OFFICE OF STEVEN G. POLIN
                                   BRANCART & BRANCART
22

23

24                                 Elizabeth Brancart
                                   Attorneys for Plaintiffs
25                                 ebrancart@brancart.com

26

27

28

**CERTIFICATE OF SERVICE**

On October 19, 2009, I served a true and correct copy of the following document(s):

**SECOND AMENDED COMPLAINT FOR INJUNCTIVE, DECLARATORY AND MONETARY RELIEF**

upon the following person(s):

Mr. Peter Pierce
Richards, Watson & Gershon
355 South Grand Avenue, 40th Floor
Los Angeles, CA 90071
Fax: (213) 626-0078

Steven G. Polin
Law Offices of Steven G. Polin
3034 Tennyson Street, NW
Washington, D.C. 20015

| | |
|---|---|
| | **BY HAND DELIVERY**: By causing such document(s) to be delivered by hand to the above person(s) at the address(es) set forth above. |
| | **BY MAIL**: By placing a copy thereof enclosed in a sealed envelope, with postage thereon fully prepaid, in the United States mail at Loma Mar, California, addressed as set forth above. |
| | **BY THIRD-PARTY COMMERCIAL CARRIER (OVERNIGHT DELIVERY)**: By delivering a copy thereof to a third-party commercial carrier, addressed as set forth above, for delivery on the next business day. |
| | **BY FACSIMILE**: By transmitting the above document(s) to the facsimile number(s) of the addressee(s) designated above. |
| xx | **BY ELECTRONIC MAIL:** By transmitting the above document(s) to the email address of the person designated above, or by electronically filing the documents on the Court's ECF system. |

Executed on October 19, 2009, Loma Mar, California.

Elizabeth Brancart

-29-