## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV 08-457 JVS (RNBx) **SACV 09-00701-JVS(RNBx)** | Date | October 25, 2010 |

| | |
|---|---|
| Title | Pacific Shores Properties LLC, et al. v. City of Newport Beach **Newport Coast Recovery LLC, et al. v. City of Newport Beach** |

| Present: The Honorable | James V. Selna | |
|---|---|---|
| Karla J. Tunis | | Not Present |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:**    (In Chambers) Order Denying Plaintiff's Motion for Summary Adjudication as to Issues and Granting in Part and Denying in Part Defendant's Motion for Partial Summary Judgment

Defendant City of Newport Beach ("Newport Beach" or "the City") moves for partial summary judgment pursuant to Federal Rule of Civil Procedure 56 in both of these related cases. (08-457 Docket No. 82; 09-701 Docket No. 62.) Plaintiffs Pacific Shores Properties, LCC, Alice Conner, Sean Wiseman, Andrew Blair, and Terri Bridgeman ("Pacific Shores") also move for partial summary judgment pursuant to Rule 56. (08-457 Docket No. 78.) Plaintiffs Newport Coast Recovery ("NCR") and Yellowstone Women's First Step House, Inc. ("Yellowstone") have joined Pacific Shores' motion. (09-701 Docket No. 46.) The motions are opposed.

I.     BACKGROUND

The case involves challenges to the validity and enforcement of various zoning ordinances enacted by Newport Beach in 2007 and 2008.

In April, May, and October 2007, the Newport Beach City Council ("City Council") adopted three ordinances that placed a temporary moratorium on "transitory uses" in residential zoning districts. (See Ordinance No. 2007-8, Def.'s Pacific Shores Compendium of Exs., Ex. B; Ordinance No. 2007-10, Def.'s Pacific Shores Compendium of Exs., Ex. C; Ordinance No. 2007-16, Def.'s Pacific Shores Compendium of Exs., Ex. D.) The 2007 ordinances defined "transitory uses" as including "new residential uses where the average tenancy is usually less than ninety (90) days." (Ordinance No. 2007-8

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 08-457 JVS (RNBx)                    Date    October 25, 2010
            **SACV 09-00701-JVS(RNBx)**

Title    Pacific Shores Properties LLC, et al. v. City of Newport Beach
         **Newport Coast Recovery LLC, et al. v. City of Newport Beach**

§ 2(C)(12), Def.'s Pacific Shores Compendium of Exs., Ex. B; Ordinance No. 2007-10 §
2(B)(10), Def.'s Pacific Shores Compendium of Exs., Ex. C; Ordinance No. 2007-16,
Def.'s Pacific Shores Compendium of Exs., Ex. D.)

On January 22, 2008, the City Council adopted Ordinance 2008-5, which expressly
repealed the 2007 moratorium on transitory uses and amended the Newport Beach
Municipal Code to restrict certain group uses in residential districts. (See Ordinance
2008-5, Def.'s Pacific Shores Compendium of Exs., Ex. A.) Ordinance 2008-5 prohibits
any "group residential" use in residential districts. (See id. § 5.) Group residential is
defined as follows:

> Shared living quarters, occupied by two or more persons not living together
> as a single housekeeping unit. This classification includes, without
> limitation, boarding or rooming houses, dormitories, fraternities, sororities,
> and private residential clubs, but excludes residential care facilities (general,
> small licensed, and small unlicensed) and residential hotels [citation].

(Id. § 3(C).) Ordinance 2008-5 also prohibits operation of "residential care facilities,"
with the exception of state-licensed facilities with under six residents (which are
permitted in all residential districts), in any residential district, with the exception of the
"MFR" district.[1] Residential care facilities are defined in general[2] as follows:

> Any place, site or building, or groups of places, sites or buildings, licensed
> by the state or unlicensed, in which seven or more individuals with a
> disability reside who are not living together as a single housekeeping unit
> and in which every person residing in the facility (excluding the licensee,
> members of the licensee's family, or persons employed as facility staff) is an
> individual with a disability.

---

[1] The "MFR" district is zoned for multi-family residential usage. (See Ordinance 2008-5 § 5,
Def.'s Pacific Shores Compendium of Exs., Ex. A.)

[2] Ordinance 2008-5 makes a distinction between small licensed and unlicensed residential care
facilities. (See Ordinance 2008-5 § 5(I)-(J), Def.'s Pacific Shores Compendium of Exs., Ex. A.) This
distinction is not relevant here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 08-457 JVS (RNBx)                    Date   October 25, 2010
           **SACV 09-00701-JVS(RNBx)**

Title   Pacific Shores Properties LLC, et al. v. City of Newport Beach
        **Newport Coast Recovery LLC, et al. v. City of Newport Beach**

(Id. § 3(H).) The definitions of group residential and residential care facilities explicitly exclude persons living together as a "single housekeeping unit." Single housekeeping unit is defined as follows:

> The functional equivalent of a traditional family, whose members are an interactive group of persons jointly occupying a single dwelling unit, including the joint use of and responsibility for common areas, and sharing household activities and responsibilities such as meals, chores, household maintenance, and expenses, and where, if the unit is rented, all adult residents have chosen to jointly occupy the entire premises of the dwelling unit, under a single written lease with joint use and responsibility for the premises, and the makeup of the household occupying the unit is determined by the residents of the unit rather than the landlord or property manager.

(Id. § 1.) A single housekeeping unit is permitted in any residential district. Thus, a use that would otherwise fall within the definition of either group residential or residential care facilities is nonetheless permitted in any residential district if it falls within the definition of a single housekeeping unit.

For existing uses made non-conforming by Ordinance 2008-5, a use permit process was established. (See id. § 17.) A procedure that allowed disabled individuals to apply for reasonable accommodation from the zoning restrictions was also created. (See id. § 19.)

Plaintiffs operate, or in the case of the individual Plaintiffs reside in, group residences for persons recovering from drug and/or alcohol addictions. These group residences are known as sober living homes. It is not disputed that the individuals residing in the sober living homes operated by the Plaintiffs' are disabled.

The Court has previously held that Ordinance 2008-5 is facially valid and not void for vagueness. (See Order 5-8, 08-457 Docket No. 40.) The Court also held that Pacific Shores' challenge to the use permit process for existing uses made non-conforming by Ordinance 2008-5 was not ripe because Pacific Shores never applied for a use permit, but that its challenge to the imposition of a permit requirement was ripe. (Id. at 8-10.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 08-457 JVS (RNBx)                    Date   October 25, 2010
           **SACV 09-00701-JVS(RNBx)**

Title   Pacific Shores Properties LLC, et al. v. City of Newport Beach
        **Newport Coast Recovery LLC, et al. v. City of Newport Beach**

II.   LEGAL STANDARD

        Summary judgment is appropriate only where the record, read in the light most favorable to the nonmoving party, indicates that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Summary adjudication, or partial summary judgment "upon all or any part of a claim," is appropriate where there is no genuine issue of material fact as to that portion of the claim. Fed. R. Civ. P. 56(a), (b).

        Material facts are those necessary to the proof or defense of a claim, and are determined by reference to substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322. A fact issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal quotation marks and citations omitted). In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

        The burden initially is on the moving party to demonstrate an absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If the moving party meets its burden, then the nonmoving party must produce enough evidence to rebut the moving party's claim and create a genuine issue of material fact. See id. at 322-23. If the nonmoving party meets this burden, then the motion will be denied. Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc., 210 F.3d 1099, 1103 (9th Cir. 2000). Where the parties have made cross-motions for summary judgment, the Court must consider each motion on its own merits. Fair Hous. Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001). The Court will consider each party's evidentiary showing, regardless of which motion the evidence was tendered under. See id. at 1137.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 08-457 JVS (RNBx) | Date | October 25, 2010 |
| | **SACV 09-00701-JVS(RNBx)** | | |

| | |
|---|---|
| Title | Pacific Shores Properties LLC, et al. v. City of Newport Beach |
| | **Newport Coast Recovery LLC, et al. v. City of Newport Beach** |

III.   <u>DISCUSSION</u>

        Newport Beach has filed separate motions for partial summary judgment in each of the related cases. The motion filed in the Pacific Shores case focuses primarily on Plaintiffs' disparate treatment and selective enforcement claims related to Ordinance 2008-5, while the motion filed in the NCR / Yellowstone case focuses primarily on challenges to the use permit and reasonable accommodation process established by Ordinance 2008-5. Newport Beach also raises various standing issues and moves for summary judgment on Plaintiffs' claims related to Newport Beach's General Plan, the 2007 Ordinances, and the California Right to Privacy. Plaintiffs' motion is related exclusively to Newport Beach's General Plan. The Court discusses each of the issues raised in the motions below.

        A.   <u>Disparate Treatment / Selective Enforcement</u>

        Newport Beach moves for summary judgment on Plaintiffs' claims based upon theories of disparate treatment and selective enforcement of Ordinance 2008-5. Plaintiffs base their disparate treatment and selective enforcement claims on the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 <u>et seq.</u>, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 <u>et seq.</u>, the California Fair Employment and Housing Act ("FEHA"), Cal. Govt. Code § 12926 <u>et seq.</u>, and the Equal Protection Clause of the Fourteenth Amendment, via 42 U.S.C. § 1983.

        The legal analysis of a disparate treatment claim is substantively identical under the FHA, ADA and FEHA, and is based on the Title VII discrimination analysis. <u>See</u> <u>Budnick</u> <u>v.</u> <u>Town</u> <u>of</u> <u>Carefree</u>, 518 F.3d 1109, 1114 (9th Cir. 2008); <u>Gamble</u> <u>v.</u> <u>City</u> <u>of</u> <u>Escondido</u>, 104 F.3d 300, 304-05 (9th Cir. 1997) (applying Title VII discrimination analysis to FHA discrimination claims in the zoning context); <u>Auburn</u> <u>Wood</u> <u>I</u> <u>Homeowners</u> <u>Assoc.</u> <u>v.</u> <u>Fair</u> <u>Employment</u> <u>and</u> <u>Hous.</u> <u>Comm'n</u>, 121 Cal. App. 4th 1578, 1591 (Ct. App. 2004). With respect to disparate treatment under the Equal Protection Clause, because "'the disabled do not constitute a suspect class' for equal protection purposes, a governmental policy that purposefully treats the disabled different from the non-disabled need only be 'rationally related to legitimate legislative goals' to pass constitutional muster." <u>Lee</u> <u>v.</u> <u>City</u> <u>of</u> <u>Los</u> <u>Angeles</u>, 250 F.3d 668, 687 (9th Cir. 2001)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| Case No. | SACV 08-457 JVS (RNBx)          Date   October 25, 2010 |
| | **SACV 09-00701-JVS(RNBx)** |

| | |
|---|---|
| Title | Pacific Shores Properties LLC, et al. v. City of Newport Beach |
| | **Newport Coast Recovery LLC, et al. v. City of Newport Beach** |

(quoting Does 1-5 v. Chandler, 83 F.3d 1150, 1155 (9th Cir. 1996)); see also City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432 (1985); Gamble, 104 F.3d at 307-08.

The parties in their briefing treat Plaintiffs' selective enforcement claim as a distinct theory from the disparate treatment claim. The Court, however, believes that in this case the two theories are essentially identical, in that the disparate treatment claim is premised on allegations that Newport Beach has enforced Ordinance 2008-5 against sober living homes for disabled individuals but not other similarly situated non-disabled individuals. See Schwarz v. City of Treasure Island, 544 F.3d 1201, 1216-17 (11th Cir. 2008) (discussing disparate treatment claim premised on allegations of selective enforcement of zoning ordinance). Regardless of whether or not they are premised on distinct theories, both claims fail for the same reason: the lack of any evidence that similarly situated non-disabled individuals have been treated differently than disabled individuals in the enforcement of Ordinance 2008-5.

In this context, "a disparate treatment claim requires a plaintiff to show that he has actually been treated differently than similarly situated non-handicapped people." Id. at 1216; see also Gamble, 104 F.3d at 305 (stating that, in the context of a use permit process, a plaintiff must show that the "defendant approved a conditional use permit for a similarly situated party during a period relatively near the time plaintiff was denied its conditional use permit"); cf. McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1121 (9th Cir. 2004) ("Under Title VII, an individual suffers disparate treatment 'when he or she is singled out and treated less favorably than others similarly situated on account of race.'" (quoting Jauregui v. City of Glendale, 852 F.2d 1128, 1134 (9th Cir. 1988))). Here, Plaintiffs have failed to establish that they were treated differently with respect to enforcement of Ordinance 2008-5 than any other similarly situated non-disabled person. On the contrary, Newport Beach has produced evidence that it has enforced Ordinance 2008-5's single housekeeping unit requirement and prohibition of group homes against similarly situated non-disabled persons.

Plaintiffs argue that short term lodgings[3] are similarly situated to sober living

---

[3] Under section 5.95 of the Newport Beach Municipal Code, a "lodging unit" is a "dwelling unit or residence, including the bedroom, kitchen and bath, [that] is rented or leased to a person or group of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 08-457 JVS (RNBx) **SACV 09-00701-JVS(RNBx)** | Date | October 25, 2010 |

| | |
|---|---|
| Title | Pacific Shores Properties LLC, et al. v. City of Newport Beach **Newport Coast Recovery LLC, et al. v. City of Newport Beach** |

homes and are treated differently with respect to enforcement of Ordinance 2008-5. The Court disagrees. On its face, Ordinance 2008-5 applies equally to short term lodgings and sober living homes: both types of group uses are prohibited if they do not qualify as single housekeeping units, but are permitted if they are single housekeeping units. See Table infra.

| | **Single housekeeping unit** | **Non-single housekeeping unit** |
|---|---|---|
| **Sober living homes (residential care facilities)** | Allowed in any residential district. No permit required. (Ordinance 2008-5 § 5) | Prohibited in most residential districts, but can apply for reasonable accommodation or, if existing use before Ordinance 2008-5, can apply for use permit. (Ordinance 2008-5 §§ 5, 17, 19) |
| **Short term lodging** | Allowed in any residential district only if short term lodging permit is obtained. (N.B.M.C. § 5.95) | Prohibited entirely in all residential districts. (Ordinance 2008-5 § 5) |

Plaintiffs place great emphasis on the fact that Newport Beach has issued numerous permits for short term lodgings, despite the fact that they "cause many of, if not the very same, problems" as sober living homes. (Pacific Shores' Opp'n Br. 12-13.) However, the short term lodging permit requirement actually undermines Plaintiffs' disparate treatment allegation, as the existence of this requirement shows that short term

---

persons living as a single housekeeping unit." (N.B.M.C. § 5.95, Def.'s Pacific Shores Compendium of Exs., Ex. Y.) "Short term" is defined as an "occupancy of a lodging unit for a period of thirty (30) consecutive calendar days or less." (Id.) Thus, as used in this motion, the term "short term lodging" refers to a "lodging unit" in which occupancy is "short term" as defined in section 5.95 of the Newport Beach Municipal Code.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 08-457 JVS (RNBx) **SACV 09-00701-JVS(RNBx)** | Date | October 25, 2010 |

| | |
|---|---|
| Title | Pacific Shores Properties LLC, et al. v. City of Newport Beach **Newport Coast Recovery LLC, et al. v. City of Newport Beach** |

lodgings are actually treated <u>worse</u> than similarly situated sober living homes. This is because a sober living home (or any other group residential use) that is a single housekeeping unit is automatically allowed in any residential district, while a short term lodging that is a single housekeeping unit must first be granted a permit. (<u>See</u> N.B.M.C. § 5.95, Def.'s Pacific Shores Compendium of Exs., Ex. Y.) Additionally, a short term lodging permit can only be granted where a landlord seeks to rent to a single housekeeping unit (<u>id.</u>), so the short term lodging permitting process does not create an exception to Ordinance 2008-5's general prohibition on non-single housekeeping unit uses in residential districts.

Plaintiffs could, in theory, establish disparate treatment if they were to show that there were non-single housekeeping unit short term lodgings that were tolerated or permitted by Newport Beach, but they have not done so. Plaintiffs argue, on the basis of short term lodging lease agreements submitted by Newport Beach (Def.'s Pacific Shores Compendium of Exs., Ex. K), that the City has granted short term lodging permits where lodgings were not rented to non-single housekeeping units. (<u>See</u> Pacific Shores' Opp'n Br. 18.) Plaintiffs argue that the leases show that at least some short term lodgings permitted by Newport Beach fall out of the single housekeeping unit definition because they contain restrictions on the age of renters that undermine "the tenants' freedom to determine the makeup of the household." (<u>Id.</u>)

Although it is true that one of the short term lodging leases in the record requires that at least one occupant be at least 26 years old, this does not mean that the landlord is determining the makeup of the household occupying the unit instead of the residents of the unit. Rather, it is simply a restriction imposed by the landlord with respect to the types of single housekeeping units that he is willing to rent to: in this case single housekeeping units must have at least one person age 26. This is no different than a landlord requiring at least one tenant in a group seeking to rent a property have a credit score over 700. The short term lodging landlord is not himself creating a group of tenants by selecting individuals only of a certain age; rather a group of persons that have chosen, on their own, to live together approaches the landlord as a group seeking to rent his property. This is distinct from the practice in Plaintiffs' sober living homes. Plaintiffs screen and select each individual tenant in the sober living home based on the condition that the "person must be sober to join and remain in the household" (<u>id.</u>), rather than

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 08-457 JVS (RNBx) | Date | October 25, 2010 |
| | **SACV 09-00701-JVS(RNBx)** | | |

| | |
|---|---|
| Title | Pacific Shores Properties LLC, et al. v. City of Newport Beach |
| | **Newport Coast Recovery LLC, et al. v. City of Newport Beach** |

imposing a restriction on an independently formed group of prospective tenants must remain sober during the course of the tenancy.[4]

Plaintiffs also point to unauthorized commercial uses in residential districts as support for their disparate treatment claim, arguing that the City has enforced Ordinance 2008-5 against sober living homes but not these commercial uses. (Id. 17.) First, the Court disagrees that these commercial uses are similarly situated to sober living homes, at least with respect to the enforcement of Ordinance 2008-5. Although a commercial use in a residential district and a sober living home may both be in violation of various zoning restrictions, the record does not establish that they are both in violation of the restrictions on group residential uses specifically created by Ordinance 2008-5. Commercial uses in residential districts were not prohibited for the first time by Ordinance 2008-5. Plaintiffs' argument would perhaps be persuasive if the record showed that Newport Beach generally failed to enforce its zoning laws, with the exception of its active enforcement of the group usage restrictions in Ordinance 2008-5, but it does not.

Second, even if it was proper to compare unauthorized commercial uses in residential districts with sober living homes, the record does not reflect Plaintiffs' contention that Newport Beach is ignoring these zoning violations. Plaintiffs have identified only four unauthorized commercial uses in residential districts. (See Pacific Shores' Compendium of Exs., Ex. 25; Def.'s Pacific Shores Reply Br. 14-15.) The City has now sent abatement notices to these properties (Lepo Supp. Decl. ISO Pacific Shores' Mot., Ex. A), and has provided legitimate reasons for the delay in enforcement (Kiff Supp. Decl. ISO Def.'s Pacific Shores Mot. ¶¶ 1-8).

Neither short term lodgings nor commercial uses in residential districts provide any support for Plaintiffs' allegation that they have been subject to disparate treatment and selective enforcement. Although this is sufficient to grant summary judgment on this issue in favor of Newport Beach, the Court also notes that the record contains evidence that the City enforces Ordinance 2008-5's single housekeeping unit requirement against non-disabled individuals. (See Def.'s Pacific Shores Compendium of Exs., Exs. Z, AA;

---

[4] As explained more fully in Part D, infra, the Court finds that Plaintiffs' facilities are not single housekeeping units.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 08-457 JVS (RNBx)                    Date    October 25, 2010
           **SACV 09-00701-JVS(RNBx)**

Title      Pacific Shores Properties LLC, et al. v. City of Newport Beach
           **Newport Coast Recovery LLC, et al. v. City of Newport Beach**

Pacific Shores' Compendium of Exs., Ex. 18; Cosylion Supp. Decl. ISO Def.'s Pacific
Shores Mot.) Plaintiffs argue that the City's enforcement efforts against illegal dwellings
are not relevant because they are directed towards situations where property owners had
physically created illegal dwellings by dividing an existing property. (Pacific Shores'
Opp'n Br. 29-30.) However, as Newport Beach points out, in several instances violations
of the single housekeeping unit requirement was specifically noted by the City's zoning
enforcement personnel. (Pacific Shores' Compendium of Exs., Ex. 18 at 719 ("I advised
Mrs. Burke that the upper unit must be rented and occupied as a single housekeeping
unit."); Cosylion Supp. Decl. ISO Def.'s Pacific Shores Mot., Ex. B at 6 (finding
violation because there were "multiple oral and written leases for the three tenants"); <u>id.</u>
at 8 ("I advised Mrs. Badorek that all of the tenants had to be on one lease."); Def.'s
Pacific Shores Compendium of Exs., Ex. Z at 320 (issuing citation "for operating a
boarding house"); Def.'s Pacific Shores Compendium of Exs., Ex. AA at 362 ("Property
owner was advised that in no way should any of the rooms be rented as a separate
occupancy. The units must be rented as a whole unit and not room by room as
independent units.").)

        Finally, the Court takes notice of the large amount of evidence submitted by
Plaintiffs regarding Newport Beach's allegedly discriminatory intent in passing
Ordinance 2008-5. Evidence of discriminatory intent, however, is irrelevant in the
absence of a discriminatory act. Although cases in the employment discrimination
context suggest that a plaintiff can avoid summary judgment on a disparate treatment
claim by producing sufficient evidence of discriminatory intent, <u>see</u>, <u>e.g.</u>, <u>McGinest</u>, 360
F.3d at 1121-24, the Court does not read these cases as standing for the proposition that a
disparate treatment claim can proceed even where there has been no showing of actual
disparate treatment.

        At the hearing, Plaintiffs argued that they do not need to establish that they were
treated different than similarly situated non-disabled individuals in order to maintain a
disparate treatment claim. In support of this contention, Plaintiffs referenced dicta in
<u>Schwarz</u> that suggests that "the analysis might have been different" if the municipality
had passed a law "in order to discriminate against people with disabilities." <u>Schwarz</u>, 544
F.3d at 1217. The <u>Schwarz</u> court failed to explain why this distinction would make any
difference in the analysis. To the extent this statement implies that a plaintiff can

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 08-457 JVS (RNBx) | Date | October 25, 2010 |
| | **SACV 09-00701-JVS(RNBx)** | | |

| | |
|---|---|
| Title | Pacific Shores Properties LLC, et al. v. City of Newport Beach |
| | **Newport Coast Recovery LLC, et al. v. City of Newport Beach** |

maintain a disparate treatment claim without showing that "he has actually been treated differently than similarly situated" people, id. at 1216, it would be directly contrary to the actual holding of Schwarz and other disparate treatment cases. See id.; Oxford House-C v. City of St. Louis, 77 F.3d 249, 252 (8th Cir. 1996).

Plaintiffs have not identified, and the Court has not found, any case in which a facially neutral statute that was passed with an intent to discriminate against a protected class was found to be invalid without an accompanying showing of either actual disparate treatment of others similarly situated or disparate impact on a protected class. The two cases cited by Plaintiffs at the hearing, Village of Arlington Heights v. Metropolitan Housing Development, 429 U.S. 252 (1977), and Pyke v. Cuomo, 258 F.3d 107 (2d Cir. 2001), do not stand for the proposition that discriminatory intent alone is sufficient. The Supreme Court in Arlington Heights held that a zoning decision that has a disproportionate impact on a protected class was not unconstitutional unless the decision was motivated by a discriminatory purpose. See Arlington Heights, 429 U.S. at 270-71 ("Respondents simply failed to carry their burden of proving that discriminatory purpose was a motivating factor in the Village's decision. This conclusion ends the constitutional inquiry. The court of Appeals' further finding that the Village's decision carried a discriminatory 'ultimate effect' is without independent constitutional significance."). Nothing in Arlington Heights suggests that intent alone is sufficient to establish a disparate treatment claim. Likewise, the Second Circuit's statement in Pyke that "[i]t is unnecessary for the plaintiffs to allege or show . . . the existence of better treated, similarly situated persons of a different race" in order to state an intentional discrimination claim does not mean that such a showing is not required to establish a disparate treatment claim. Pyke, 258 F.3d at 110. Rather, the Pyke court was simply noting that there are other ways to establish an intentional discrimination claim that do not require a showing of disparate treatment, such as by showing that "a facially neutral policy . . . has an adverse effect and . . . was motivated by discriminatory animus."[5] Id.

---

[5] This is a reference to the elements of a disparate impact claim, as established in Arlington Heights. See Brown v. City of Oneonta, New York, 221 F.3d 329, 337 (2d Cir. 2000) ("A plaintiff could also allege that a facially neutral statute or policy has an adverse effect and that it was motivated by discriminatory animus." (citing Arlington Heights, 429 U.S. at 264-65)). The City has not moved for summary judgment on Plaintiffs' disparate impact claim. (See Def.'s Pacific Shores Reply Br. 2.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 08-457 JVS (RNBx)                    Date    October 25, 2010
            **SACV 09-00701-JVS(RNBx)**

Title       Pacific Shores Properties LLC, et al. v. City of Newport Beach
            **Newport Coast Recovery LLC, et al. v. City of Newport Beach**

<u>Pyke</u> does not hold that a disparate treatment claim can be maintained without a showing that other similarly-situated people were treated differently than members of the protected class.

Because Plaintiffs have failed to identify any evidence showing that they were treated differently than similarly situated non-disabled individuals, the Court grants summary judgment in favor of Newport Beach with respect to Plaintiffs' disparate treatment and selective enforcement claims brought under the FHA, ADA, FEHA, and the Equal Protection Clause.[6] Accord <u>Schwarz</u>, 544 F.3d at 1216 ("Gulf Coast, however, has utterly failed to establish that it was treated differently than anyone else. It cannot muster a single instance in which the City failed to enforce the occupancy-turnover rule against non-handicapped people . . . . Because Gulf Coast was treated just like everyone else, it has no disparate treatment claim."); <u>Oxford</u> <u>House-C</u>, 77 F.3d at 252 ("Having concluded Oxford House did not show the City treated the Oxford Houses differently from any other group, we believe the City's enforcement actions were lawful regardless of whether some City officials harbor prejudice or unfounded fears about recovering addicts.").

B.    <u>Enforcement of the 2007 Ordinances</u>

Newport Beach seeks summary judgment with respect to Pacific Shores' discrimination claims brought under the FHA, ADA, FEHA and the Equal Protection Clause, to the extent they are based upon the City's enforcement of the 2007 Ordinances that enacted a temporary moratorium on transitory uses in residential districts. (See Ordinance No. 2007-8, Def.'s Pacific Shores Compendium of Exs., Ex. B; Ordinance No. 2007-10, Def.'s Pacific Shores Compendium of Exs., Ex. C; Ordinance No. 2007-16, Def.'s Pacific Shores Compendium of Exs., Ex. D.) The parties agree that Pacific Shores' claims related to the 2007 Ordinances are moot with respect to injunctive and declaratory relief because the ordinances have since been repealed. (See Pacific Shores' Opp'n Br. 20.) They also appear to agree that the claims are not moot with respect to damages. (See

---

[6] It follows from this grant of summary judgment in favor of the City that Ordinance 2008-5 is not preempted by the FHA or FEHA. (See Pacific Shores' Opp'n Br. 30-31 (arguing that Ordinance 2008-5 is preempted by the FHA and FEHA).)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 08-457 JVS (RNBx) | Date | October 25, 2010 |
| | **SACV 09-00701-JVS(RNBx)** | | |

| Title | Pacific Shores Properties LLC, et al. v. City of Newport Beach |
| | **Newport Coast Recovery LLC, et al. v. City of Newport Beach** |

Def.'s Pacific Shores Mot. Br. 5 (not arguing that claims are moot with respect to damages); Def.'s Pacific Shores Reply Br. 24 (same); Pacific Shores' Opp'n Br. 20.)

Newport Beach argues that it is entitled to summary judgment on Pacific Shores' claims with respect to damages caused by the moratorium ordinances for two reasons. First, it contends that it validly enforced the 2007 Ordinances because Pacific Shores was engaging in transitory uses. (Def.'s Pacific Shores Mot. Br. 5.) Second, it argues that the removal of short term lodgings from the prohibition on transitory uses is irrelevant because short term lodgings are not similarly situated to sober living homes. (Id. at 5-6.) Both of these arguments are unpersuasive.

The City never explains why validly enforcing the moratorium on transitory uses against Pacific Shores would defeat Pacific Shores' discrimination claims. The City seems to assume that if it correctly applies a law then that law, or its enforcement, cannot be found to be discriminatory or otherwise invalid under FHA, ADA, FEHA or the Equal Protection Clause. That is simply incorrect.[7] In any event, a genuine issue of material fact remains with respect to whether the enforcement was valid. Specifically, the record contains conflicting evidence regarding the average length of tenancy at Pacific Shores' sober living homes. (Compare Def.'s Pacific Shores Compendium of Exs., Ex. I-J (calculating average tenancy in 2008 as less than 90 days) with Manderson Decl. ¶ 4 ("I estimate that the typical length of stay for our house members in 2007 was several months and more than 90 days.").)[8]

Newport Beach's argument regarding whether short term lodging uses are similarly situated to sober living homes with respect to the moratorium appears to be an attempt to show that Pacific Shores cannot establish a disparate treatment claim on the basis of the

---

[7] For example, it is surely the case that a zoning law that explicitly excluded only members of a protected class from a specific residential district would be impermissible regardless of whether the government had "correctly" applied the restriction only to members of the protected class.

[8] Newport Beach objects to this statement in the Manderson Declaration as lacking foundation. The objection is overruled, as Manderson's statement that he has been the manager of Pacific Shores for five years is a sufficient factual foundation for his estimate of the length of the typical stay at Pacific Shores' sober living homes in 2007. (See Manderson Decl. ¶ 1.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 08-457 JVS (RNBx)                    Date    October 25, 2010
            **SACV 09-00701-JVS(RNBx)**

Title    Pacific Shores Properties LLC, et al. v. City of Newport Beach
         **Newport Coast Recovery LLC, et al. v. City of Newport Beach**

2007 Ordinances. However, unlike with the prohibition on group uses in Ordinance
2008-5, short term lodgings are similarly situated to sober living homes with respect to
the moratorium on transitory uses in the 2007 Ordinances. The City argues that short
term lodgings are not similarly situated to residential care facilities because "[r]enters of
short-term lodgings enjoy a possessory interest in the lodging." (Def.'s Pacific Shores
Mot. Br. 6.) Whether a use is transitory, as defined by the 2007 Ordinances, has nothing
to do with the type of interest residents have in the property. None of the three definitions
of "transitory uses" found in the 2007 Ordinances make a distinction based upon the type
of interest held by tenants. (See Ordinance No. 2007-8 § 2(C)(12), Def.'s Pacific Shores
Compendium of Exs., Ex. B; Ordinance No. 2007-10 § 2(B)(10), Def.'s Pacific Shores
Compendium of Exs., Ex. C; Ordinance No. 2007-16, Def.'s Pacific Shores Compendium
of Exs., Ex. D.) Rather, the determining factors are simply the length of the tenancy, the
location of the use, and whether the use was "new."

        The City does not argue, nor could it, that short term lodgings, which by definition
involve tenancies of less than 30 days (N.B.M.C. § 5.95, Def.'s Pacific Shores
Compendium of Exs., Ex. Y), are not transitory uses. Indeed, Ordinance 2007-8 explicitly
contemplated coverage of short term lodgings in the definition of transitory use.
(Ordinance No. 2007-8 § 2(C)(12) ("'Transitory uses' shall include . . . short-term
lodging pursuant to short-term lodging permits.").) This definition remained the same in
two subsequent ordinances that explicitly exempted short term lodgings from the
moratorium. (Compare id. with Def.'s Pacific Shores Compendium of Exs., Ex. B;
Ordinance No. 2007-10 § 2(B)(10), Def.'s Pacific Shores Compendium of Exs., Ex. C
and Ordinance No. 2007-16, Def.'s Pacific Shores Compendium of Exs., Ex. D.) Thus, it
is illogical to argue that short term lodgings do not fall within the substantive definition
of transitory uses. Short term lodgings are similarly situated to sober living homes with
respect to the 2007 Ordinances' prohibition on transitory uses.

        Ordinances 2007-10 and 2007-16, on their face, treat similarly situated non-
disabled individuals (short term lodgings) better than disabled individuals (residential
care facilities and sober living homes). Newport Beach has failed to produce any
evidence that it enforced the 2007 Ordinances against any similarly situated non-disabled
person. Therefore, the City is not entitled to summary judgment on Pacific Shores'
discrimination claims brought under the FHA, ADA, FEHA and the Equal Protection

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 08-457 JVS (RNBx) | Date | October 25, 2010 |
|---|---|---|---|
|  | **SACV 09-00701-JVS(RNBx)** |  |  |

| Title | Pacific Shores Properties LLC, et al. v. City of Newport Beach |
|---|---|
|  | **Newport Coast Recovery LLC, et al. v. City of Newport Beach** |

Clause to the extent they are claims for damages based upon enforcement of the 2007
Ordinances.

      C.    California Right to Privacy

_____Newport Beach first argues that Pacific Shores, as a limited liability corporation,
does not enjoy a right of privacy under Article I, section 1, of the California Constitution.
(See Def.'s Pacific Shores Mot. Br. 28 (citing Roberts v. Gulf Oil Corp., 147 Cal. App.
3d 770, 791-93 (Ct. App. 1983).) Pacific Shores does not contest this, but argues that it
has standing to assert the privacy rights of its residents. (Pacific Shores' Opp'n Br. 31
(citing People v. Wiener, 29 Cal. App. 4th 1300, 1305-06 (Ct. App. 1994) (holding
distributors of obscene matter had standing to assert the privacy rights of their
customers)).) The Court agrees with Pacific Shores that, under the reasoning of Wiener, it
has standing to assert the privacy rights of its residents. Additionally, Newport Beach
fails to address Wiener in its reply brief, effectively conceding that Pacific Shores can
bring the privacy claim on behalf of its customers. Moreover, the individual plaintiffs in
this case certainly have standing to pursue a privacy claim against the City.

      Newport Beach next argues that none of the relevant ordinances violated  Article I,
section 1, of the California Constitution. The Court agrees. "[A] plaintiff alleging an
invasion of privacy in violation of the state constitutional right to privacy must establish
each of the following: (1) a legally protected privacy interest; (2) a reasonable
expectation of privacy in the circumstances; and (3) conduct by defendant constituting a
serious invasion of privacy." Hill v. Nat'l Collegiate Athletic Assoc., 7 Cal. 4th 1, 39-40
(1994). There is nothing on the face of the ordinances that would give rise to any privacy
claim and there is nothing in the record that shows they have been enforced in a way that
violates the right to privacy. As the City accurately notes, it is "unclear what legally
protected privacy interest or reasonable expectation plaintiffs are asserting." (Def.'s
Pacific Shores Mot. Br. 30.)

      Pacific Shores, citing City of Santa Barbara v. Adamson, 27 Cal. 3d 123 (1980),
argues that the right of privacy "protects home life and the freedom to associate with the
persons of one's choice" and "includes the right to be left alone in our homes." (Pacific
Shores' Opp'n Br. 31.) However, nothing in the 2007 Ordinances or Ordinance 2008-5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 08-457 JVS (RNBx) | Date | October 25, 2010 |
|---|---|---|---|
| | **SACV 09-00701-JVS(RNBx)** | | |

| Title | Pacific Shores Properties LLC, et al. v. City of Newport Beach |
|---|---|
| | **Newport Coast Recovery LLC, et al. v. City of Newport Beach** |

infringes upon these rights. Pacific Shores residents are still free to associate with and live with whomever they choose in any residential zone in Newport Beach; they simply must do so as a single housekeeping unit (or, in the case of the 2007 Ordinances, for a period of time longer than ninety days). Unlike in Adamson, there is no hard numerical restriction on the number of unrelated persons that can live together in residential districts . See Adamson, 27 Cal. 3d at 127 (describing zoning ordinance that prohibited groups consisting of more than five unrelated persons in residential zones). In fact, the California Supreme Court in Adamson explicitly distinguished the impermissible numerical restriction on group size with restrictions identical to those that Newport Beach has enacted:

> [C]ould not each of the city's stated goals be enhanced by means that are less restrictive of freedom than is the rule-of-five? To illustrate, "residential character" can be and is preserved by restrictions on transient and institutional uses (hotels, motels, boarding houses, clubs, etc.).

Id. at 134.

      D.    Use Permit & Reasonable Accommodation Process

Newport Beach moves for summary judgment on Pacific Shores' claims challenging the Ordinance 2008-5 use permit requirement and process. (See Def.'s Pacific Shores Mot. Br. 8-14.) Newport Beach also moves for summary judgment on NCR and Yellowstone's claims challenging the Ordinance 2008-5 use permit requirement and process, as well as the City's reasonable accommodation process. (See generally Def.'s NCR & Yellowstone Mot. Br.) Due to its relevance to the use permit claims, the Court will first discuss the issue of whether Plaintiffs' facilities are single housing keeping units. The Court will then turn to Newport Beach's arguments regarding standing, ripeness, and the validity of the use permit and reasonable accommodation process.

      1.    Are Plaintiffs' Facilities Single Housekeeping Units?

The parties disagree as to whether the sober living homes operated by Pacific

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 08-457 JVS (RNBx)                    Date   October 25, 2010
**SACV 09-00701-JVS(RNBx)**

Title   Pacific Shores Properties LLC, et al. v. City of Newport Beach
**Newport Coast Recovery LLC, et al. v. City of Newport Beach**

Shores and Yellowstone are single housekeeping units, as defined by Ordinance 2008-5.[9]
Ordinance 2008-5 defines single housekeeping unit as follows:

> The functional equivalent of a traditional family, whose members are an
> interactive group of persons jointly occupying a single dwelling unit,
> including the joint use of and responsibility for common areas, and sharing
> household activities and responsibilities such as meals, chores, household
> maintenance, and expenses, and where, if the unit is rented, all adult
> residents have chosen to jointly occupy the entire premises of the dwelling
> unit, under a single written lease with joint use and responsibility for the
> premises, and the makeup of the household occupying the unit is determined
> by the residents of the unit rather than the landlord or property manager.

(Ordinance 2008-5 § 1, Def.'s Pacific Shores Compendium of Exs., Ex. A.) After
reviewing the submitted evidence, the Court finds that there is no genuine issue of
material fact with respect to whether the facilities operated by Pacific Shores and
Yellowstone are single housekeeping units and concludes that these facilities are not
single housekeeping units.

Pacific Shores' facilities fall out of the single housekeeping unit definition for at
least two reasons. First, no single written lease covers all the residents at any Pacific
Shores facility. (See Def.'s Pacific Shores Compendium of Exs., Ex. T; Statement of
Genuine Issues in Opp'n to Def.'s Pacific Shores Mot. 18 (failing to deny that Pacific
Shores residents occupy the facility under separate written arrangements).) Plaintiffs
argue that there is no single written lease requirement in the single housekeeping unit
definition, citing statements made by Newport Beach's City Manager David Kiff. (Pacific
Shores' Opp'n Br. 25-26 (citing Kiff Depo. 340-41, Pacific Shores' Compendium of
Exs., Ex. 32.).) Even assuming that Pacific Shores' characterization of the City's
interpretation of the lease requirement is accurate, which the Court doubts after reviewing
the cited statements, such an interpretation cannot override the clear text of the single

---

[9] It appears that Plaintiffs do not dispute that NCR's facility was not single housekeeping units,
as they have admitted facts that establish that NCR's facility was not a single housekeeping unit. (See
Corrected Statement of Genuine Issues in Opp'n to Def.'s NCR & Yellowstone Mot. 12-13.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.     SACV 08-457 JVS (RNBx)                           Date   October 25, 2010
             **SACV 09-00701-JVS(RNBx)**

Title        Pacific Shores Properties LLC, et al. v. City of Newport Beach
             **Newport Coast Recovery LLC, et al. v. City of Newport Beach**

housekeeping unit definition. In order to qualify as a single housekeeping unit, "if the unit is rented, all adult residents" must be "under a single written lease." (Ordinance 2008-5 § 1, Def.'s Pacific Shores Compendium of Exs., Ex. A.)

Second, Pacific Shores itself, not the residents of its facilities, determines the makeup of the household occupying the unit. (See Manderson Depo. 65-68, Def.'s Pacific Shores Compendium of Exs., Ex. N; Statement of Genuine Issues in Opp'n to Def.'s Pacific Shores Mot. 19 (admitting that Pacific Shores' "manager or coordinator makes the initial decision about [who] will live in the house"); Pacific Shores' Opp'n Br. 26 (stating that "the manager of a group home must retain some control over occupancy, excluding persons who lack sobriety").) Pacific Shores argues that its residents are still determining the makeup of the household, despite the initial selection of residents by Pacific Shores and the ability of Pacific Shores to exclude persons who lack sobriety, because they have "final" approval of who becomes a resident. (Pacific Shores' Opp'n Br. 26; Statement of Genuine Issues in Opp'n to Def.'s Pacific Shores Mot. 19.) However, even if residents have "final" approval of who becomes a resident, it cannot be said that "the makeup of the household occupying the unit is determined by the residents of the unit rather than the landlord or property manager" because the initial selection of each individual resident is made by Pacific Shores itself and Pacific Shores retains the right to exclude any individual resident. (Ordinance 2008-5 § 1, Def.'s Pacific Shores Compendium of Exs., Ex. A.)

Yellowstone's facilities are not single housekeeping units for the same two reasons. In its reasonable accommodation application submitted to the City, Yellowstone represented that "[e]ach individual resides at the property subject to a separate contractual arrangement with the applicant." (Def.'s NCR & Yellowstone Compendium of Exs., Ex. 102 at 16.) Subsequent to the submission of this application, counsel for Yellowstone sent a letter to the City stating that "Yellowstone does not have a contractual relationship with the residents of its properties." (NCR & Yellowstone's Compendium of Exs., Ex. A at 172.)[10] Although these two factual statements appear to be contradictory, this does not

---

[10] It is unclear to the Court what Yellowstone's current position on this issue is, given that it has since admitted that "Yellowstone's first application for a reasonable accommodation confirmed that individuals reside [in] its properties subject to a separate contractual arrangement." (Corrected

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | | |
|---|---|---|---|---|
| Case No. | SACV 08-457 JVS (RNBx) | | Date | October 25, 2010 |
| | **SACV 09-00701-JVS(RNBx)** | | | |

| | |
|---|---|
| Title | Pacific Shores Properties LLC, et al. v. City of Newport Beach |
| | **Newport Coast Recovery LLC, et al. v. City of Newport Beach** |

preclude summary judgment because Plaintiffs have not identified any evidence that residents at Yellowstone facilities are all on the same single written lease. The letter in which Yellowstone denies having a contractual relationship between itself and its residents does not establish that the residents are all on a single written lease. Additionally, Yellowstone's Executive Director, Anna Thames, indicated at her deposition that enrollees in Yellowstone's programs sign agreements with Yellowstone. (Thames Depo. 75-77, Def.'s NCR & Yellowstone Compendium of Exs., Ex. 101.)[11] The record also indicates that Yellowstone, like Pacific Shores, has a significant role in determining the makeup of the household at their sober living homes. See id. at 73-80 (describing Yellowstone's initial screening and interviewing process);[12] Thames Decl. ¶ 7 ("Before a person joins a Yellowstone household, I review [the sobriety] rules with them to determine whether they are prepared to be a member."). Although, similar to the

_____

Statement of Genuine Issues in Opp'n to Def.'s NCR & Yellowstone Mot. 15.)

[11] Plaintiffs assert that Thames' references to agreements were limited to Yellowstone's Costa Mesa treatment program, not the Newport Beach sober living homes. (See Corrected Statement of Genuine Issues in Opp'n to Def.'s NCR & Yellowstone Mot. 14.) The Court does not believe that this characterization of Thames' testimony is accurate. Thames did not specifically limit her responses related to the agreement solely to the Costa Mesa treatment program. Moreover, there is some indication in Thames' testimony that the agreement pertained to both the treatment program and the sober living homes. Thames first described how a new resident would ideally transition from "a 30-day treatment program" to "sober living" for "at least 90 days, if not six months." (Thames Depo. 74, Def.'s NCR & Yellowstone Compendium of Exs., Ex. 101; see also id. at 79 ("Q And the assignment in Costa Mesa is for 30 days? A Thirty days. Then they go to sober living.").) Thames later described the agreement as potentially obligating clients "to pay 8500 for 90 days." (Id. at 76.) This 90-day agreement would appear to cover both the 30-day treatment program and subsequent placement in a sober living home.

[12] Plaintiffs again contend that Thames was only referring to the treatment centers, not the sober living homes. (See Corrected Statement of Genuine Issues in Opp'n to Def.'s NCR & Yellowstone Mot. 14.) However, Thames did not make this distinction explicit in her testimony. Additionally, Thames discussed both the 30-day treatment program and the subsequent placement in a sober living home in her description of the interview. (Thames Depo. 73-74, Def.'s NCR & Yellowstone Compendium of Exs., Ex. 101 ("Q Do you perform the intake, the initial analysis of a person? A Some of it, yes. Q What – how does that conversation go? A . . . We want a 30-day treatment program. Then they can go into sober living. We'd like them to stay at least 90 days, if not six months. And the first 30 days is intensive treatment, so we talk about that.").)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 08-457 JVS (RNBx) | Date | October 25, 2010 |
| | **SACV 09-00701-JVS(RNBx)** | | |

| | |
|---|---|
| Title | Pacific Shores Properties LLC, et al. v. City of Newport Beach |
| | **Newport Coast Recovery LLC, et al. v. City of Newport Beach** |

arrangements at Pacific Shores, other residents may play a role in the selection of new residents (see Thames Decl. ¶ 6 ("House members play a role in select[ing] other house memebers.")), it is clear that Yellowstone has a significant hand in the selection process and thus it cannot be said that "the makeup of the household occupying the unit is determined by the residents of the unit rather than the landlord or property manager." (Ordinance 2008-5 § 1, Def.'s Pacific Shores Compendium of Exs., Ex. A.)

In sum, the Court concludes that Plaintiffs' facilities are not single housekeeping units, as defined by Ordinance 2008-5.

2.    Standing & Ripeness

Newport Beach argues that Plaintiffs lack standing to challenge the City's decision to require their facilities to obtain a use permit pursuant to Ordinance 2008-5. The Court agrees. Plaintiffs are seeking to operate as non-single housekeeping units in residential districts, which is uniformly prohibited under Ordinance 2008-5. The mere act of allowing Plaintiffs to apply for a use permit cannot constitute an injury because, as this Court has previously observed, the use permit requirement is actually a special benefit available only to residential care facilities. (Order 5, 08-457 Docket No. 40 ("[T]he Ordinance facially treats residential care facilities more favorably than all other group residential uses: among all non-single housekeeping units, only residential care facilities – for which Pacific Shores may well qualify – are eligible for a use permit.").) Plaintiffs' injury (the inability to operate in certain residential districts) stems not from the City's creation of a use permit process for residential care facilities but rather the general prohibition of group uses. Accordingly, the Court grants summary judgment in favor of Newport Beach to the extent that Plaintiffs challenge the imposition of a use permit requirement.[13]

It is unclear if the City is also arguing that Plaintiffs lack standing not only to challenge the requirement of a use permit but also the process used by the City in evaluating the request for a use permit or reasonable accommodation. (Compare Def.'s

---

[13] This, of course, does not mean that Plaintiffs lack standing to challenge the enactment or enforcement of Ordinance 2008-5's prohibition on group uses.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 08-457 JVS (RNBx) | Date | October 25, 2010 |
| | **SACV 09-00701-JVS(RNBx)** | | |

| Title | Pacific Shores Properties LLC, et al. v. City of Newport Beach |
| | **Newport Coast Recovery LLC, et al. v. City of Newport Beach** |

NCR & Yellowstone Notice of Mot. 2 ("Neither NCR nor Yellowstone have standing to challenge the City's Use Permit or Reasonable Accommodation processes . . . .") with Def.'s NCR & Yellowstone Mot. Br. 9 ("Plaintiffs lack standing to challenge the requirement that they obtain use permits for their facilities.").) In any event, the Court does not believe that it necessarily follows that Plaintiffs lack standing to challenge the use permit or reasonable accommodation process simply because they are not single housekeeping units and thus were legitimately required by the City to avail themselves of the permitting process (or else face abatement). Plaintiffs would surely have a cognizable injury if the permitting process established by the City was discriminatory or otherwise invalid, as this would mean they were illegitimately denied a right created either by Ordinance 2008-5 itself (in the case of the use permit) or various anti-discrimination statutes (in the case of reasonable accommodation).

Newport Beach also contends that NCR's challenge to the use permit and reasonable accommodation process is not ripe because NCR failed to exhaust the available administrative remedies by declining to an appeal to the Newport Beach City Council. (Def.'s NCR & Yellowstone Mot. Br. 9-11.) In response, Plaintiffs rely primarily on Bryant Woods Inn, Inc. v. Howard County, 124 F.3d 597 (4th Cir. 1997), in which the Fourth Circuit rejected an argument that a hotel's FHA claim was not ripe because it "did not complete the administrative process by appealing to the Howard County Board of Appeals." Id. at 601. The Bryant Woods court explained that "[w]hile the county must be afforded an opportunity to make a final decision, the issue is sufficiently concrete for judicial resolution once an accommodation is denied." Id. at 602. This is because "[u]nder the Fair Housing Act . . . a violation occurs when the disabled resident is first denied a reasonable accommodation" and thus the hotel had "alleged a completed violation of the Fair Housing Act." Id. Newport Beach argues that Bryant Woods is distinguishable from this case, since the permit denial there did not involve a "going concern," but rather a prospective use. (Def.'s NCR & Yellowstone Reply Br. 16-17.) The Court does not agree that this distinction is relevant. NCR faced abatement if it did not obtain a permit. Thus, the necessity of the permit is no less critical here than it was to the hotel in Bryant Woods.

The City also cites Oxford House, Inc. v. City of Virginia Beach, 825 F. Supp. 1251 (E.D. Va. 1993), in which the court noted that requiring plaintiffs to first apply to a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 08-457 JVS (RNBx) | Date | October 25, 2010 |
| | **SACV 09-00701-JVS(RNBx)** | | |

| | |
|---|---|
| Title | Pacific Shores Properties LLC, et al. v. City of Newport Beach |
| | **Newport Coast Recovery LLC, et al. v. City of Newport Beach** |

local government for a use permit prevents federal courts from "becoming not zoning boards of appeals, but zoning boards of first instance, a result Congress surely did not intend" in passing the FHA. Id. at 1261. Oxford House is simply not on point, since NCR actually did apply for a permit. Moreover, the rule adopted in Bryant Woods is not inconsistent with the concern that federal courts should not be zoning boards of first instance, since it requires a use permit denial before a claim becomes ripe.

Therefore, having found no contrary authority or a persuasive reason to reach a different result than the Fourth Circuit, the Court will follow Bryant Woods. NCR's challenge to the permit process is ripe.

Finally, the Court finds that Pacific Shores' challenge to the use permit process is not ripe, since it never applied for a use permit. This conclusion follows from the Court's previous decision on this issue. (See Order 10, 08-457 Docket No. 40.) To the extent Pacific Shores still maintains a challenge to the use permit process, the Court grants summary judgment in favor of the City.

3.      Validity of the Use Permit & Reasonable Accommodation Process

Newport Beach seeks summary judgment on the issue of whether the procedures used in considering NCR and Yellowstone's use permit and reasonable accommodation applications were valid. With one exception,[14] the Court does not interpret this request for summary judgment as reaching any claim Plaintiffs may have that they were wrongfully denied a use permit or reasonable accommodation. Rather, it appears that Newport Beach's motion, at least before its reply brief, was directed almost exclusively to Plaintiffs' challenges to the procedures used in the administrative process, not the result. (Compare Def.'s NCR & Yellowstone Mot. Br. 11 ("The Administrative Procedures for Implementation of the Ordinance are Valid and Constitutional."); id. at 12 ("[Plaintiffs'] allegations do not constitute a deprivation of Plaintiffs' rights to procedural due process."); id. at 16 ("The Applicant Does Not Bear the Burden of Proof in the

---

[14] The City did seek in its moving papers summary judgment on the issue of whether the hearing officer's denial of Yellowstone's use permit was valid because Yellowstone's facilities were not legally established prior to the passage of Ordinance 2008-5. (Def.'s NCR & Yellowstone Mot. Br. 23-25.)

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 08-457 JVS (RNBx)                    Date   October 25, 2010
           **SACV 09-00701-JVS(RNBx)**

Title   Pacific Shores Properties LLC, et al. v. City of Newport Beach
        **Newport Coast Recovery LLC, et al. v. City of Newport Beach**

Reasonable Accommodation Process."); <u>id.</u> at 18 ("NCR & Yellowstone complain that the reasonable accommodation and use permit processes, as applied to them, were burdensome, time-consuming and discriminatory. As the following discussion shows, they were not."); <u>with</u> Def.'s NCR & Yellowstone Reply Br. 5 ("Substantial Evidence in the Record Supports the Hearing Officer's Decision to Deny NCR and Yellowstone's Use Permits."); <u>id.</u> at 9 ("The Hearing Officer Properly Denied Yellowstone and NCR's Reasonable Accommodation Requests.").)[15]

Because the substantive issues pertaining to the use permit and reasonable accommodation denials were not raised in the City's moving papers, the Court will not make any ruling on such issues. For example, the Court will not determine if there is genuine issue of material fact with respect to whether the accommodations requested by Plaintiffs would fundamentally alter the City's zoning program. Likewise, a determination as to whether or not the hearing officer's decision to deny a use permit violated the FHA, FEHA, ADA of the Fourteenth Amendment cannot be made by the Court on this motion. These and all other arguments related to the decision of the hearing officer and the merits of NCR & Yellowstone's substantive challenges to the City's denial of a use permit and reasonable accommodation, with the one exception discussed above, were simply not raised by Newport Beach in its motion.

Newport Beach seeks summary judgment on the following issues: (1)_whether the use permit application form itself is burdensome and discriminatory (Def.'s NCR & Yellowstone Mot. Br. 12-14); (2) whether the standard of review for granting a use permit under Ordinance 2008-5 is discriminatory (<u>id.</u> at 15); (3) whether Ordinance 2008-5 impermissibly requires certain factual findings (<u>id.</u> at 15-16); (4) whether Ordinance

_____

[15] Newport Beach seems to have shifted its focus from the process utilized by the hearing officer to the legitimacy of the resulting decision, likely because of arguments made by Plaintiffs in their opposition brief. (<u>See</u> NCR & Yellowstone's Opp'n Br. 15 (arguing that the hearing officer "imposed a spacing requirement based solely on the disability status" in violation of the FHA); <u>id.</u> at 21-23 (discussing the legitimacy of the hearing officer's reasonable accommodation denial).) However, arguments related to the hearing officer's decision are clearly distinct from the process-focused arguments the City made in its moving papers, with the exception of the validity of denying Yellowstone's use permit because its use was not legally established prior to the passage of Ordinance 2008-5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 08-457 JVS (RNBx) | Date | October 25, 2010 |
| | **SACV 09-00701-JVS(RNBx)** | | |

| Title | Pacific Shores Properties LLC, et al. v. City of Newport Beach |
| | **Newport Coast Recovery LLC, et al. v. City of Newport Beach** |

2008-5 unlawfully places the burden of disproving the City's affirmative defenses on reasonable accommodation applicants (id. at 16-17); (5) whether approved reasonable accommodations expire within twenty-four months (id. at 17-18); (6) whether the time and effort required for NCR to complete its use permit and reasonable accommodation application was excessive (id. at 18-19); (7) whether the City did not provide NCR with a staff report within a sufficient number of days prior to the hearing (id. at 20); (8) whether the hearing officer improperly considered NCR's licensing with the state (id. at 21); (9) whether NCR was denied the ability to cross examine witnesses at the hearing (id. at 22); (10) whether the City attempted to impose more stringent fire code and parking requirements on Yellowstone than it did on others (id. at 23);[16] (11) whether Yellowstone's hearing was improperly delayed (id.); and (12) whether the hearing officer's denial of Yellowstone's use permit was valid because Yellowstone's facilities were not legally established prior to the passage of Ordinance 2008-5. (id. at 23-25). Plaintiffs have failed to respond at all to the second, third, fifth, sixth, seventh, and tenth issues raised by Newport Beach.[17] Accordingly, the Court grants summary judgment in favor of Newport Beach on those issues.

---

[16] Plaintiffs' contend that the City did not move for summary judgment on this issue. (See 09-701 Docket No. 116.) The Court disagrees, as the City's motion brief specifically references Yellowstone's allegations with respect to the fire code and parking requirements in its discussion of why the use permit and reasonable accommodation process was valid as-applied to Yellowstone. (See Def.'s NCR & Yellowstone Mot. Br. 23.)

[17] After reviewing a tentative version of this order, Plaintiffs filed a list of additional citations to the existing record that they argue constitute a response to these issues, as well as the first, eighth, and ninth issues. (09-701 Docket No. 116.) The Court has reviewed these additional citations and concludes that they lack sufficient legal argument to constitute an adequate response to the City's motion. The additional citations are mainly to the factual record, which is unhelpful because these issues are not in dispute as a factual matter but only as a legal matter. For example, the parties do not dispute the date when the City provided the staff report to NCR, as they both agree it was on July 1, 2009 (see Corrected Statement of Genuine Issues in Opp'n to Def.'s NCR & Yellowstone Mot. 22), but they do disagree as to the legal effect of providing the report on that date (or, more precisely, they would likely have disagreed as to the legal effect if Plaintiffs had provided any legal argument on this issue). They have likewise failed to provide a sufficient legal argument on the other issues noted above and additional factual citations also are simply inadequate.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 08-457 JVS (RNBx)                      Date   October 25, 2010
          **SACV 09-00701-JVS(RNBx)**

Title   Pacific Shores Properties LLC, et al. v. City of Newport Beach
      **Newport Coast Recovery LLC, et al. v. City of Newport Beach**

      Plaintiffs' response is so cursory with respect to the first, eighth, and ninth issues that the Court deems it insufficient to defeat summary judgment. (See NCR & Yellowstone's Opp'n Br. 19, 24-25.) Plaintiffs have not provided any legal argument or citations to relevant evidence on these issues. Instead, with respect to the eighth and ninth issues, they simply recite that they made objections at the hearing related to their alleged inability to cross examine certain witnesses due to federal confidentiality regulations and the zoning board's consideration of an alleged state licensing infraction. They do not explain why these objections were meritorious. As for the first issue, which is related to whether the application forms were burdensome and discriminatory, Plaintiffs list information they feel was improper for the City to request, but they do not explain why this is the case and it is not obvious to the Court that this information is irrelevant or improper for the City to request. (See id. at 19, 24.) Accordingly, the Court grants summary judgment in favor of Newport Beach on the first, eighth, and ninth issues.

      Plaintiffs do not provide much more argument on the eleventh issue, which concerns the City's alleged delay in providing a hearing. (See id. 20-21, 24-25.) Plaintiffs assert that the failure of Ordinance 2008-5 to set "a specific time frame for decision-making on requests for reasonable accommodation" renders it procedurally defective. (Id. at 20.) Plaintiffs provide no support for this assertion, although after the subsequent sentence they cite Groome Res. Ltd. v. Parish of Jefferson, 234 F.3d 192 (5th Cir. 2000), for the proposition that a failure to act on a reasonable accommodation request after three months constitutes a constructive denial. See id. at 199 (stating that an FHA reasonable accommodation "denial can be both actual or constructive, as an indeterminate delay has the same effect as an outright denial"). Groome's holding does not provide any support for Plaintiffs' assertion that failing to promptly consider a reasonable accommodation request renders any subsequent consideration invalid. Rather, Groome stands for the proposition that if an entity excessively delays consideration of a reasonable accommodation request, the applicant can seek to compel the provision of a reasonable accommodation by filing a lawsuit. This built-in remedy for excessive delays alleviates any potential due process or other infirmity related to a delay in the consideration of reasonable accommodation applications.[18] Accordingly, the Court grants summary

_____

[18] The Court notes that, under Groome, Plaintiffs could have brought suit against the City at an earlier stage than they did. Their failure to seek relief from the courts for any excessive delay they may

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 08-457 JVS (RNBx) | Date | October 25, 2010 |
|---|---|---|---|
| | **SACV 09-00701-JVS(RNBx)** | | |

| Title | Pacific Shores Properties LLC, et al. v. City of Newport Beach |
|---|---|
| | **Newport Coast Recovery LLC, et al. v. City of Newport Beach** |

judgment in favor of Newport Beach on the eleventh issue.

This leaves two issues: the fourth (whether Ordinance 2008-5 unlawfully places the burden of disproving the City's affirmative defenses on reasonable accommodation applicants) and the twelfth (whether the hearing officer's denial of Yellowstone's use permit was valid because Yellowstone's facilities were not legally established prior to the passage of Ordinance 2008-5).

Plaintiffs contend that Ordinance 2008-5 impermissibly shifts the burden of proof on the issue of whether an accommodation is reasonable, effectively requiring reasonable accommodation applicants to disprove the City's affirmative defenses. (See NCR & Yellowstone's Opp'n Br. 18 (citing Giebler v. M & B Assocs., 343 F.3d 1143, 1149 (9th Cir. 2003).) In response, Newport Beach argues that Ordinance 2008-5 does not impose the burden shifting that Plaintiffs complain of. (Def.'s NCR & Yellowstone Mot. Br. 16-17; Def.'s NCR & Yellowstone Reply Br. 12-13.) The Court agrees with the City's interpretation of Ordinance 2008-5. Although Ordinance 2008-5 does require the hearing officer to make findings related to the City's affirmative defenses before approving an accommodation (see Ordinance 2008-5 § 19 (N.B.M.C. § 20.98.025(B)), Def.'s Pacific Shores Compendium of Exs., Ex. A), this does not mean that it places the burden on applicants to put on evidence with respect to the City's affirmative defenses in order to obtain the requisite findings. This provision simply requires that the hearing officer make certain findings. The mere requirement to make a finding does not inherently shift the burden of proof. (See Def.'s NCR & Yellowstone Reply Br. 12.) If the City cannot meet its burden on an affirmative defense that happens to be one of the required findings, the hearing officer can still make a finding on the defense (and such a finding would be, by default, in favor of the applicant). Furthermore, Plaintiffs have presented no evidence suggesting that the hearing officer at their hearings placed the burden of disproving the City's affirmative defenses on them or that the City failed to introduce evidence to support its affirmative defenses. Accordingly, the Court grants summary judgment in favor of Newport Beach on the fourth issue.

The final issue is whether the hearing officer's denial of Yellowstone's use permit

have experienced does not render the City's actions substantively or procedurally invalid.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 08-457 JVS (RNBx)                    Date   October 25, 2010
           **SACV 09-00701-JVS(RNBx)**

Title   Pacific Shores Properties LLC, et al. v. City of Newport Beach
        **Newport Coast Recovery LLC, et al. v. City of Newport Beach**

was valid because Yellowstone's facilities were not legally established prior to the
passage of Ordinance 2008-5. On the basis of the current record, the Court is unable to
determine whether or not Yellowstone's facilities were not legally established prior to the
passage of Ordinance 2008-5. The hearing officer concluded that Yellowstone's facilities
were not legally established because, prior to Newport Beach's annexation of West Santa
Ana Heights, Yellowstone's facilities would have been subject to Orange County's
zoning regulations and these regulations would have prohibited Yellowstone's facilities
unless they had obtained use permits. (See NCR & Yellowstone's Compendium of Exs.,
Ex. B.) The hearing officer further found that there was no evidence that Yellowstone had
ever obtained such use permits. (See id.) Newport Beach seeks a determination that these
conclusions were valid. However, the hearing officer's decision does not contain a
sufficient explanation so as to allow the Court to conduct an independent evaluation of
his reasoning and the City has made no attempt to explain why Yellowstone was in
violation of the Orange County zoning regulations. The regulations are not cited in
Newport Beach's briefing and the text of the regulations is not presented or applied.
Legal conclusions provided in a declaration are insufficient. (See, e.g., Brown Decl. ISO
Def.'s NCR & Yellowstone Mot. ¶ 13 ("My research revealed that under County
Ordinances in effect at the time, Yellowstone's uses would have been classified as either
a community care facility or a congregate care facility.").) Therefore, on the record
currently before the Court, Newport Beach is not entitled to summary judgment on this
issue.

        E.      Newport Beach's General Plan

      Plaintiffs allege that Ordinance 2008-5 "is unenforceable against plaintiffs because
the City had failed to enact a valid General Plan, or amend its General Plan to comply
with applicable state law," at the time the ordinance was adopted. (Fourth Am. Compl. ¶
80, 08-457 Docket No. 60; Second Am. Compl. ¶ 81, 09-701 Docket No. 19.) Plaintiffs
also allege that Newport Beach's "course of conduct with regard to plaintiffs, including,
but not limited to, enacting and attempting to enforce [the 2007 Ordinances and
Ordinance 2008-5], was unlawful because these zoning actions were inconsistent with
mandatory elements of the General Plan under the California Planning and Zoning Law."
(Fourth Am. Compl. ¶ 80, 08-457 Docket No. 60; Second Am. Compl. ¶ 81, 09-701
Docket No. 19.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 08-457 JVS (RNBx)                    Date    October 25, 2010
            **SACV 09-00701-JVS(RNBx)**

Title    Pacific Shores Properties LLC, et al. v. City of Newport Beach
         **Newport Coast Recovery LLC, et al. v. City of Newport Beach**

The parties have made cross-motions for summary judgment with respect to the General Plan-related claim. Newport Beach moves on the basis that this claim is time-barred. Plaintiffs seek summary judgment on the merits of the claim. The Court will first address whether Plaintiffs' claim is timely, before considering it on the merits.

Newport Beach argues that Plaintiffs' claim is time-barred for several reasons. (See Def.'s Pacific Shores Mot. Br. 31-35.) First, the City argues that the claim is untimely because a lawsuit brought to "attack, review, set aside, void, or annul the decision of a legislative body to adopt or amend a general or specific plan" must be brought within 90 days of the legislative body's decision. Cal. Gov't Code § 65009(c)(1)(A). Newport Beach last amended its General Plan on July 25, 2006 and Plaintiffs did not file their suits until April 28, 2008 (Pacific Shores) and June 16, 2009 (NCR & Yellowstone). However, the Court agrees with Plaintiffs that California Government Code section 65009(c)(1)(A) is not applicable because they are not seeking to attack the City's General Plan itself, but rather the decision to adopt a specific zoning ordinance. (See Pacific Shores' Opp'n Br. 34 (disclaiming that they are attempting to mount a facial attack on the General Plan itself).) The inadequacy of the General Plan is at issue only because Plaintiffs claim that this, in turn, made the ordinances at issue invalid.

Having concluded that Plaintiffs are challenging the enactment of a zoning ordinance, the Court finds that the proper statute of limitations is California Government Code section 65009(c)(1)(B). This provision requires suits challenging the enactment of a zoning ordinance to be brought within 90 days of the enactment.[19] Plaintiffs argue that the continuing failure of the General Plan to comply with statutory mandates means that California Civil Procedure Code section 338(a)'s three-year statute of limitations applies rather than section 65009(c)(1)(B)'s 90 day limitations period. (See Pacific Shores' Reply Br. 35 (citing Travis v. County of Santa Cruz, 33 Cal. 4th 757, 773 (2004); Urban Habitat Program v. City of Pleasanton, 164 Cal. App. 4th 1561, 1576-78 (Ct. App. 2008)).) However, the cases cited by Plaintiffs only stand for the proposition that "a challenge to a local government's decision based on events that occurred after that decision took place and, therefore could not have been brought during the statutory time limits, is not

---

[19] California Government Code section 65860(b) provides an identical statute of limitations for claims alleging a zoning ordinance is inconsistent with a General Plan.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 08-457 JVS (RNBx)                     Date   October 25, 2010
           **SACV 09-00701-JVS(RNBx)**

Title   Pacific Shores Properties LLC, et al. v. City of Newport Beach
        **Newport Coast Recovery LLC, et al. v. City of Newport Beach**

---

governed by section 65009." <u>Urban Habitat Program</u>, 164 Cal. App. 4th at 1577; <u>see also</u> <u>Travis</u>, 33 Cal. 4th at 772 n.9 (explaining that its holding does not apply to alleged violations of "statutory or constitutional provisions already in force at the Time the Ordinance was adopted"). Plaintiffs have not alleged or argued that their General Plan-related claim stems from statutory changes or other events that occurred only after the passage of the zoning ordinances at issue here; on the contrary, Plaintiffs allege that the ordinances were invalid because of General Plan defects existing at the time the ordinances were passed. (Fourth Am. Compl. ¶ 80, 08-457 Docket No. 60; Second Am. Compl. ¶ 81, 09-701 Docket No. 19.); <u>see also</u> <u>Travis</u>, 33 Cal. 4th at 774 ("In a facial challenge to a zoning ordinance based on preexisting statutes or the Constitution, plaintiffs are limited, under section 65009, subdivision (c)(1)(B), to 90 days *from the ordinance's adoption*, which is the first time such a challenge could be brought."); <u>Urban Habitat Program</u>, 164 Cal. App. 4th at 1577 ("[W]hen an ordinance conflicts with statutory or constitutional provisions already in effect when the ordinance is passed, then the claim begins to accrue when the ordinance is passed.").

Newport Beach argues that this claim is untimely even under section 65009(c)(1)(B), since Ordinance 2008-5 was enacted on January 22, 2008 and this claim was not added until November 9, 2009 (Pacific Shores) and October 19, 2009 (NCR & Yellowstone). Plaintiffs respond that the General Plan-related claim relates back to the date when the case was originally filed. "An amendment to a pleading relates back to the date of the original pleading . . . when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading." Fed. R. Civ. P. 15(c)(2). Plaintiffs' original pleading clearly challenged the enactment and enforcement of the same zoning ordinances that the General Plan-related claim challenges and therefore this claim relates back to the date the original pleading was filed.

The City contends that relation back does not save the claim because Plaintiffs are challenging the General Plan as inadequate (<u>see</u> Def.'s Pacific Shores Reply Br. 23), but, as discussed above, the Court rejects this characterization of Plaintiffs' claims. Relation back does save the General Plan-related claim to the extent it challenges Ordinance 2008-5. The claim, however, is untimely to the extent it challenges the 2007 Ordinances, which were all enacted and/or enforced more than 90 days before Plaintiffs filed their original

---

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 08-457 JVS (RNBx) **SACV 09-00701-JVS(RNBx)** | Date | October 25, 2010 |

| | |
|---|---|
| Title | Pacific Shores Properties LLC, et al. v. City of Newport Beach **Newport Coast Recovery LLC, et al. v. City of Newport Beach** |

pleadings.

The Court now turns to the merits of the claim. Plaintiffs argue that Ordinance 2008-5 is invalid because it is inconsistent with elements of the General Plan because the General Plan's Housing Element was inadequate under state law. (See Pacific Shores' Mot. Br. 18.) It is clear from the cases cited by Plaintiffs that the reason why an inadequate General Plan renders an ordinance defective is because of the consistency requirement of California Government Code section 65860(a). See Fonseca v. City of Gilroy, 148 Cal. App. 4th 1174, 1182 (Ct. App. 2007) ("'Since consistency with the general plan is required, absence of a valid general plan, or valid relevant elements or components thereof, precludes enactment of zoning ordinances and the like.'" (quoting Res. Def. Fund v. County of Santa Cruz, 133 Cal. App. 3d 800, 806 (Ct. App. 1982))).[20] Therefore, the critical issue is whether Newport Beach is subject to section 65860(a).

It is undisputed that Newport Beach is a charter city and "the consistency requirement of section 65860 simply does not apply to charter cities which have not adopted the same for themselves by either charter or ordinance." Garat v. City of Riverside, 2 Cal. App. 4th 259, 284 (Ct. App. 1991). "[T]he legislative zoning enactments . . . of a charter city do not have to be consistent with that city's general plan" and therefore "inconsistency between the zoning enactments of a charter city and that city's general plan does not invalidate those zoning enactments." Id. at 281.

Plaintiffs argue that the City has adopted a consistency requirement. However, the only evidence that Plaintiffs have of such an adoption are, in the words of the Garat court, merely "scattered references to consistency" within various Newport Beach zoning laws and thus are insufficient to establish that the City has subjected itself to section 65860(a)'s consistency requirement. See Garat, 2 Cal. App. 4th at 282 ("[S]cattered references to consistency, however, fall far short of section 65803's provision that a specific requirement of consistency between the zoning enactments and the general plan of a charter city will be found to exist only if that requirement is 'adopted by charter or

---

[20] To the extent Plaintiffs contend that an inadequate General Plan renders all zoning ordinances and decisions void even in the absence of a consistency requirement, they have not cited any case law to support such a theory.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 08-457 JVS (RNBx) **SACV 09-00701-JVS(RNBx)** | Date | October 25, 2010 |

| | |
|---|---|
| Title | Pacific Shores Properties LLC, et al. v. City of Newport Beach **Newport Coast Recovery LLC, et al. v. City of Newport Beach** |

ordinance.'"). The Court has reviewed the Newport Beach Municipal Code provisions identified by Plaintiffs and concludes that they do not constitute an adoption of a consistency requirement for all zoning enactments. (See Pierce Decl. ISO Def.'s Opp'n to Pacific Shores' Mot., Ex. A.) Rather, it appears that the City has selectively adopted a consistency requirement with respect to specific zoning ordinances. There has been no general adoption of a consistency requirement. Thus, Ordinance 2008-5 was not required to be consistent with the General Plan.

The Court finds that Plaintiffs are not entitled to summary judgment on the General Plan-related claim. Furthermore, the Court finds that the relevant facts and legal issues have been adequately ventilated by the parties and that there is no genuine issue of material fact with respect to this claim. See Cool Fuel, Inc. v. Connett, 685 F.2d 309, 311-12 (9th Cir. 1982). Therefore, the Court may *sua sponte* grant summary judgment for the non-moving party. Id. Accordingly, although Newport Beach did not move for summary judgment on the merits, the Court grants summary judgment in favor of Newport Beach with respect to Plaintiffs' General Plan-related claim.

F.      Plaintiffs' Supplemental Briefing

Plaintiffs, after conducting additional discovery pursuant to Rule 56(f), filed a supplemental brief in opposition to Newport Beach's motions. (See Pl.'s Supp. Br., 08-457 Docket No. 160.) Nothing in the supplemental brief impacts the Court's decision on Newport Beach's motions.

Much of the supplemental brief is focused on purported evidence of the City's discriminatory intent. (See id. at 3-8.) However, as explained above, discriminatory intent is not at issue here. Plaintiffs recount in great detail the operation of the City Council's Ad Hoc Committee on Group Residential Uses, but none of this evidence establishes that they were treated differently than similarly situated non-disabled individuals.

Plaintiffs allege for the first time in the supplemental brief that the City violated the Brown Act by conducting "serial meetings." (Id. at 8 (citing Cal. Govt. Code § 54952.2(b).) Plaintiffs failed to assert a violation of the Brown Act in their complaints. A supplement opposition brief is an improper vehicle for raising this claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 08-457 JVS (RNBx) | Date | October 25, 2010 |
|---|---|---|---|
| | **SACV 09-00701-JVS(RNBx)** | | |

| Title | Pacific Shores Properties LLC, et al. v. City of Newport Beach |
|---|---|
| | **Newport Coast Recovery LLC, et al. v. City of Newport Beach** |

Finally, Plaintiffs argue that alleged "*ex parte*" communications between a city council member and the city manager is evidence of "flaws in the City's procedures for group home use permit and reasonable accommodation applications and appeals to the City Council." (Id. at 9.) Plaintiffs cite no case law and fail to otherwise explain why communications between a city council member and a city manager is procedurally improper and it is not obvious to the Court how these communications provide support for Plaintiffs' claims of discrimination in the use permit and reasonable accommodation process.

IV.    CONCLUSION

For the foregoing reasons, Newport Beach's motions are GRANTED IN PART AND DENIED IN PART. Pacific Shores' motion is DENIED.

IT IS SO ORDERED.

|  | 0 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | Kjt | |